1  Olu K. Orange, Esq. , SBN: 213653
2  ORANGE LAW OFFICES
   Equitable Plaza Tower
3  3435 Wilshire Blvd., Suite 2900
   Los Angeles,  California 90010
4  Telephone: (310) 815-8600
5  Fax: (775) 416-9221

6
   <u>Attorney for Plaintiff</u>
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 EDWARDO RAMOS,                          Case No.: CV07-4706 PA (JCx)

12                          Plaintiff,      PLAINTIFF'S FRCP RULE 72
                                            OBJECTIONS AND NOTICE OF
13        vs.                               MOTION AND MOTION FOR
                                            REVIEW OF DISCOVERY ORDER
14 THE CITY OF CULVER CITY, JOHN            ENTERED 4/2/08; MEMORANDUM
   MONTANIO, ADAM TREANOR,                  OF POINTS AND AUTHORITIES;
15 CHARLES KOFFMAN, ANDREW                  DECLARATION; EXHIBITS
   BELLANTE, MARCUS COLEN, BRIAN
16 HEMPEL, CURTIS MASSEY AND DOES
   1 THROUGH 10                             DATE:  May 5, 2008
17                                          TIME:   1:30 pm / LOC: Ct. #15 (Spring)
18                          Defendants.     DISC CUT: 5/19/08 - TRIAL: 07/29/08
19

20
                                            **District Judge:**
21                                          **Hon. Percy Anderson**

22
                                            Magistrate Judge:
23                                          Hon. Jacqueline Chooljian

24

25

26 **TO  THE  COURT  ALL  PARTIES  AND  THEIR  ATTORNEYS  OF**
27 **RECORD, PLEASE TAKE NOTICE:**
   PLAINTIFF  EDWARDO  RAMOS  OBJECTS  TO  THE  COURT'S  DISCOVERY
28

                              Page 1

1  ORDER ENTERED APRIL 2, 2008 (hereafter "the Order"), AND SHALL, AND

2  HEREBY DOES, MOVE FOR REVIEW PURSUANT TO FEDERAL RULE OF

3  CIVIL PROCEDURE 72. Plaintiff's motion shall be made on Monday, May 5, 2008, in

4  the courtroom of the Hon. Percy Anderson at 1:30 p.m., or as soon thereafter as counsel

5  may be heard. Plaintiff's motion and objection pertains specifically to "Item no. 3" of

6  the Order and is pursuant to Rule 72(a), Federal Rules of Civil Procedure, and shall be

7  based upon this notice, and:

8   (i)    Plaintiff Edwardo Ramos' Requests For Production From Defendant City

9          Of Culver City – Set One (Exhibit A) [served 12/05/07],

10  (ii)   Plaintiff's Motion To Compel Further Responses To Requests For Production

11         Propounded On Defendant City Of Culver City (Exhibit B) [filed 2/26/08],

12  (iii)  Plaintiff's Supplemental Brief In Support of Motion To Compel Further

13         Responses To Requests For Production Propounded On Defendant City Of

14         Culver City, (EXHIBIT C) [filed 3/18/08],

15  (iv)   Plaintiff's Second Supplemental Brief In Support of Motion To Compel

16         Further Responses To Requests For Production Propounded On Defendant

17         City Of Culver City, (EXHIBIT D) [filed 3/26/08] and the Declaration of

18         Shawn Featherstone attendant thereto, (EXHIBIT E) [filed 3/26/08],

19  (v)    Defendant's Declaration Of Officer Mark Young In Support Of Defendant

20         City Of Culver City's Supplemental Brief Re: Plaintiff Edwardo Ramos'

21         Request For Production Of Documents [Set One], (EXHIBIT F) [filed

22         3/26/08], and

23  (vi)   The Culver City Police Department's "Reportable Force Policy," (EXHIBIT

24         G) [filed 3/26/08 attached to Declaration of Justin Sarno],

25  (vii)  Magistrate Judge Jacqueline Chooljian's Order After Hearing (Exhibit H)

26         [entered 4/02/08].

27         Plaintiff's motion and objection are also based upon the attached memorandum of

28  points and authorities, and the records and files of this case, and are raised upon the

PLAINTIFF'S RULE 72 MOTION RE: 4/2/08 ORDER

grounds that Plaintiff's Request For Production of Documents, Set One, Request No. 5, demands production which is not overly burdensome for defendant, the City of Culver City, when balanced against the need for production by plaintiff, Edwardo Ramos, because:

    (a)   The requested information is essential to plaintiff's deliberate indifference claim.

    (b)   Defendant's own use of force reporting policy already requires the information to be assembled and maintained.

    (c)   Not requiring production allows a police department to spoil its records through improper maintenance and thus prevent all deliberate indifference claims against it.

    This motion is made following the conference of counsel pursuant to L.R. 7-3 which occurred on April 2nd, and April 4th, of 2008.

Respectfully submitted,

DATED: 9 APRIL 2008.               ORANGE LAW OFFICES

                                     Olu K. Orange, Esq., for Plaintiff

1      **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.**    **CASE BACKGROUND**

3       Plaintiff, Mr. Edwardo Ramos, alleges that he was racially profiled, due to his

4 ethnicity and clothing, and brutally and unlawfully beaten by officers of the Culver City

5 Police Department while other officers stood by and watched. The beating occurred after

6 a foot chase that ensued when Mr. Ramos ran from two of the officers upon their

7 attempt to unlawfully detain him after observing him stand one foot away from his

8 mother's pick up truck and look in the window. After the beating, Mr. Ramos was taken

9 by the officers to their jail in Culver City, and locked up. At no time did Mr. Ramos

10 engage in any criminal activity, nor was he in possession of any contraband or criminal

11 implements. On July 20, 2007, Mr. Ramos commenced the instant action in response to the

12 violations of his rights.

13       On December 5, 2007, Plaintiff's counsel had served upon defendants (through

14 counsel) discovery requests entitled "PLAINTIFF EDWARDO RAMOS' REQUESTS

15 FOR PRODUCTION FROM DEFENDANT CITY OF CULVER CITY – SET ONE,"

16 consisting of eleven separate requests for materials. On January 4, 2008, Defendant Culver

17 City (hereafter "Culver City') served in response, Defendant City of Culver City's

18 Response to Request for Production of Documents [Set One]. Most requests did not result

19 in the production of information. Thereafter, Plaintiff moved to compel (EXHIBIT B).

20       Subsequent to Plaintiff's motion to compel, Magistrate Judge Jacqueline Chooljian

21 ordered submission of two sets of additional briefing and declarations from the parties'

22 technical representatives (EXHIBITS C through F). After the last set of briefing, Judge

23 Chooljian held an April 1, 2008, hearing on the matter and entered an order on April 2nd,

24 pursuant to the hearing (EXHIBIT H).

25       This objection is raised, and motion is brought, regarding Plaintiff's request for

26 the past seven years of police reports and other records wherein any of the named

27 defendants are involved and that also indicate that an arrested or detained person was

28 injured or required medical treatment. Judge Choolijian denied Plaintiff's Motion to

PLAINTIFF'S RULE 72 MOTION RE: 4/2/08 ORDER

1   Compel production of these records.

2        Plaintiff contends that these records are crucial to his deliberate indifference and

3   equal protection claims. Defendant Culver City basically contends that the records

4   Plaintiff is seeking are stored in a computer database system in a fashion that makes

5   them essentially irretrievable upon the criteria indicated by Plaintiff (see EXHIBIT F;

6   ¶13). Plaintiff's position is that (i) very basic database record retrieval methods would

7   yield the sought records if executed by a person with the requisite knowledge and

8   experience (see EXHIBIT E; ¶¶ 7, 8), and (ii) Defendant's own use of force reporting

9   policy requires that these same records be assembled and maintained upon the same

10  criteria upon which Plaintiff has based his request (see EXHIBIT G; pg. (bates#

11  000095)). Thus, this information should already be assembled.

12

13  **II.    DISCOVERY IN DISPUTE**

14       Plaintiff's specific discovery request is:

15       *"REQUEST NO. 5: For the past seven years, every writing maintained,*
     *received or generated by you, or available to you, related to, constituting,*
16   *or purporting to be police reports of any kind (by way of example but not*
     *limitation: incident reports, arrest reports, crime reports, log entries, etc.)*
17   *meeting all of the following criteria: (i) in any way mentioning any of the*
     *individual defendants named in this case, AND (ii) involving the arrest or*
18   *detention of any person, AND (iii) wherein any person was indicated as*
     *injured and/or given medical treatment of any type or degree."* (see
19   EXHIBIT A,  5:27 - 6:5)
20

21

22       The Court's ruling was:

23       *"As to Document Request No. 5, the Court denied the Motion to Compel*
     *based upon its finding that the burden of the proposed discovery*
24   *outweighs its likely benefit, after considering the factors set forth in Fed.*
     *R. Civ. P. 26(b)(2)(C)(iii)."* (see EXHIBIT H; pg. 1)
25

26

27       Plaintiff brings this objection and motion in an attempt to obtain necessary

28  discovery crucial to his deliberate indifference and equal protection claims. Without

Page 5

1  access to the requested information, neither Plaintiff, nor any person suffering physical

2  and/or Constitutional injury in an incident with the Culver City Police Department,

3  would be able to successfully pursue such claims against the City of Culver City.

4

5  ### III.   AUTHORITY AND STANDARD OF REVIEW

6      Magistrate judges' rulings on nondispositive motions may be set aside or

7  modified by the district court if found to be "clearly erroneous" or "contrary to law."

8  [28 USC §636(b)(1)(A); FRCP 72(a); Bhan v. NME Hospitals, Inc. (9th Cir.1991) 929

9  F2d 1404, 1414; Castillo v. Frank (5th Cir. 1995) 70 F3d 382, 385-386]. Further,

10 pursuant to Federal Rule of Civil Procedure 72(a), "the district judge to which a case is

11 assigned shall modify or set aside any portion of a magistrate judge's discovery order

12 found to be clearly erroneous or contrary to law." The "clearly erroneous" standard

13 applies only to a magistrate judge's findings of fact, while questions of law are reviewed

14 under the de novo standard to determine whether they are "contrary to law." United

15 States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir. 1984). Mixed questions of law

16 and fact,  such as whether the rule of law as applied to the established facts is or is not

17 violated, are also subject to de novo review. E.g., Plumbers v. Pipefitters Local 572

18 Pension Fund v. Cisco Systems, Inc., 2005 U.S. Dist. LEXIS 43648, 11 (N.D. Cal.

19 2005); HIH Marine Ins. Servs. v. Virgin Atl. Airways, Ltd., 105 F. Supp. 2d 1083, 1091

20 (N.D. Cal. 2000). Where, as here, the conclusions objected to in the magistrate judge's

21 Order are either questions of law or mixed questions of law or fact, the applicable

22 standard of review is de novo.

23

24 ### IV.   THE APRIL 2, 2008, ORDER WAS CLEARLY ERRONEOUS AND/OR

25 ### CONTRARY TO LAW

26     The Court denied Plaintiff's motion to compel production as to its discovery

27 request (Request For Production No. 5, Set One) citing the basis that it was unduly

28 burdensome. Discovery may be denied as unduly burdensome where *"harm to the*

*person from whom discovery is sought outweighs the need of the person seeking discovery."* <u>Green v. Baca</u>, 219 F.R.D. 485, 493 (D. Cal. 2003). The potential harm to Culver City in being required to find and assemble information in a manner consistent with its own force reporting policies does not outweigh Mr. Ramos' need for the information in pursuit of his case. Without the discovery, substantial portions of Mr. Ramos case will likely be lost. If Defendant is required to assemble the information, it is doing nothing other than its own policies mandate. Plaintiff's disputed discovery request imposed no undue burden on Defendant and the denial of Plaintiff's motion to compel was clearly erroneous and/or contrary to law.

    A.   <u>Production is not overly burdensome when harm to Culver City is balanced against Edwardo Ramos' need for discovery</u>

    1.   <u>The discovery is essential to plaintiff's deliberate indifference and equal protection claims</u>

Mr. Ramos has alleged that he has been the victim of excessive force and racial profiling. In order to prove the municipal liability claims attendant to these allegations Mr. Ramos must adduce evidence of policies, practices or customs. Actions against municipalities for violation of § 1983 are governed by <u>Monell v. Dep't of Soc. Servs.,</u> 436 U.S. 658 (1978) and its extensive progeny. Under these cases, a local government is only liable where the municipality itself causes the constitutional violation; liability may not be imposed on the basis of respondeat superior. <u>City of Canton v. Harris,</u> 489 U.S. 378, 385 (1989). The requested documents are essential to Mr. Ramos' ability to show the requisite patterns and practices necessary to establish municipal liability under his Failure to Train and Equal Protection claims. Failure to Train liability will attach under § 1983 where an official policy, provable through a pattern or practice, amounts to "deliberate indifference" to the rights of the adversely affected party and causes injury. See <u>Canton</u>, 489 U.S. at 388.

Equal Protection claims may also be established via pattern and/or practice. Per

1  the U.S. Supreme Court in <u>Arlington Heights v. Metro. Hous. Dev. Corp.</u>, *"The impact of*
2  *the official action -- whether it "bears more heavily on one race than another," ([citing]*
3  <u>*Washington v. Davis*</u>*, 426 U.S. 229, 242 (U.S. 1976)), - may provide an important starting*
4  *point. Sometimes a clear pattern, unexplainable on grounds other than race, emerges from*
5  *the effect of the state action even when the governing legislation appears neutral on its face.*
6  <u>*Yick Wo v. Hopkins*</u>*, 118 U.S. 356 (1886); Guinn v. United States, 238 U.S. 347 (1915);*
7  *Lane v. Wilson, 307 U.S. 268 (1939); Gomillion v. Lightfoot, 364 U.S. 339 (1960). The*
8  *evidentiary inquiry is then relatively easy."* <u>Arlington Heights v. Metro. Hous. Dev. Corp.</u>,
9  429 U.S. 252, 266 (U.S. 1977).

10     The requested documents, inclusive of police reports, will indicate the
11  race/ethnicity of persons involved, and the extent to which any were injured or required
12  medical treatment. The frequency with which either criterion appears will show the
13  patterns, practices and/or customs essential to Mr. Ramos' ability to establish municipal
14  liability under his Failure to Train and Equal Protection claims. Per <u>Bd. of County</u>
15  <u>Comm'rs v. Brown</u>, 520 U.S. 397, 407 (1997), *"... a plaintiff may demonstrate a pattern*
16  *of constitutional violations on the part of defendant. Continuing adherence by*
17  *policymakers "to an approach that they know or should know has failed to prevent*
18  *tortious conduct by employees may establish the conscious disregard for the*
19  *consequences of their action -- the 'deliberate indifference' - necessary to trigger*
20  *municipal liability."* <u>Id.</u> *(citation omitted.) Thus, a pattern of tortious conduct by*
21  *inadequately trained employees may show lack of proper training . . . is the 'moving*
22  *force' behind the plaintiff's injury."* <u>Id.</u> *at 407-08 (citation omitted)."*

23     Moreover, per the Ninth Circuit:

24     *"... a local government may be liable for its custom irrespective of whether*
25  *official policymakers had actual knowledge of the practice at issue. The existence of*
26  *custom as a basis for liability under § 1983 thus serves a critical role in insuring that*
27  *local government entities are held responsible for widespread abuses or practices that*
28  *cannot be affirmatively attributed to the decisions or ratification of an official*

1  *government policymaker but are so pervasive as to have the force of law."* <u>Thompson v.</u>

2  <u>Los Angeles</u>, 885 F.2d 1439, 1444 (9th Cir. 1989).

3        Without the requested discovery, Mr. Ramos' injury causing encounter with the

4  Culver City Police Department is susceptible to classification by Defendant as an isolated

5  incident. Proof of random acts or isolated events are insufficient to establish custom. <u>Id.</u>

6  However, a plaintiff may prove *"the existence of a custom or informal policy with evidence*

7  *of repeated constitutional violations for which the errant municipal officials were not*

8  *discharged or reprimanded."* <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1348 (9th Cir. 1992),

9  cert. denied, 126 L. Ed. 2d 310, 114 S. Ct. 345 (1993). Once such a showing is made, a

10  municipality may be liable for its custom *"irrespective of whether official policy-makers*

11  *had actual knowledge of the practice at issue."* <u>Thompson</u>, 885 F.2d at 1444.

12        Without the requested discovery, Mr. Ramos cannot make any showing as to

13  patterns, practices or customs of discriminatory treatment based upon race/ethnicity,

14  uses of excessive force, likelihood of reoccurrence, nor adequacy of training, nor

15  conscious disregard -- and thus municipal liability via deliberate indifference. As the

16  courts have set forth deliberate indifference as a method of establishing municipal

17  liability, Mr. Ramos must have the opportunity to conduct full discovery as to elements

18  which support deliberate indifference as the bases for theories of liability. He must have

19  the opportunity to prove these claims, which have survived Defendant's motions to

20  dismiss.

21

22       2.   <u>Defendant's own use of force reporting policy already requires the</u>

23               <u>assembly and maintenance of the requested information, there is no harm</u>

24               <u>in requiring them to do what their own policy says they must do</u>

25       The Culver City Police Department's "Reportable Force" policy requires that it

26  assemble and maintain the exact same information that Plaintiff has requested be

27  assembled and produced pursuant to the disputed discovery request. In fact, Defendant's

28  policy was last revised in January of 1998 and is in-force currently. Plaintiff's request

1   only asks for information spanning the past seven years.

2        By virtue of Defendant's own policy, it is obvious that for at least the past 10

3   years Defendant should have been assembling and maintaining the records Plaintiff has

4   requested. For all of Defendant's assertions of undue burden, unfairness and inability --

5   Plaintiff is asking nothing more than Defendant's own policy already requires. To be

6   certain, Plaintiff is asking for records (i) mentioning any of the named defendants, (ii)

7   involving the arrest or detention of persons, and (iii) indicating medical treatment or

8   injury. In clear similarity, Defendant's "Reportable Force" policy is stated as follows:

> "*d. Reporting and reviewing individual use of force incidents.*
> *Reportable Force Defined:*
> *An incident wherein officers pursuant to their official capacity use a level of force above the "Restrain/Detain" level of force, **or any incident in which an injury or complaint of injury occurs during the course of contact with a subject**.*
>
> *Officers Responsibilities:*
> *Officers using reportable force shall:*
> *1. Obtain medical assistance for officers or others who have sustained injuries or complaint of injury, or who have been rendered unconscious;*
> *2. **Notify their supervisor as soon as circumstances permit**.*
> *3. **Document the use of force in an arrest/crime or officer's report**. Officers observing a use of reportable force who do not believe the spirit and intent of the reporting requirements are being met shall advise their Supervisor.*
>
> *e. Supervisor Responsibilities:*
> *When a supervisor becomes aware of the use of reportable force the supervisor shall:*
> *1. **Review the incident**.*
> *2. **Document and forward the findings to the Chief of Police via the chain of command**.*
> *(revised 3/93 G.O. 93-02) (revised 1/98)"*
> [emphasis added] (see EXHIBIT G; pg. (bates# 000095))

//

//

1      Moreover, to be in complete uniformity, at the April 1st hearing, Plaintiff
2  requested that the Court simply order production along the exact terms of Defendant's
3  Reportable Force policy. That request has also been denied. (ORANGE DECL. ¶2,
4  EXHIBIT A).

5      Based upon Defendant's own policy as quoted above, since at least 1998,
6  supervisors at the Culver City Police Department should have been reviewing police
7  reports involving injury to subjects, documenting findings, and forwarding
8  documentation through the chain of command to the Chief. Thus, either the supervisors,
9  or the Chief, should already have assembled in some fashion the documents Plaintiff
10 requested -- or some record of what was done with them, when and by whom in the
11 chain of command. Plaintiff's request imposes no burden upon Defendant other than
12 compliance with its own stated policy. Furthermore, Plaintiff's well-qualified database
13 expert conferred with Defendant's person most knowledgeable and determined that the
14 data could be accessed via basic methods.

15
16      3.      Not requiring production allows a police department to spoil its records
17              through improper maintenance and thus prevent all deliberate indifference
18              claims against it

19      Culver City's failures regarding its police department's database system are its own
20 fault, not Plaintiff's. The basis for Defendant Culver City's claim of undue hardship of
21 assembling and producing records from its own database is that Defendant has itself
22 essentially failed to correctly structure and/or maintain its database. Whether the failure is
23 found in initial structure, or in maintenance, the City of Culver City is nonetheless
24 responsible. Per the declaration of Mark Young, defendant's person most knowledgeable,
25 Defendant cannot: (i) accurately search its records to target particular officers, or (ii) search
26 its records for instances of injury or medical treatment to subjects. (EXHIBIT F; ¶13).
27 Though revised in 1998, the Reportable Force policy has been in effect since 1993. Since
28 then, how have reports involving injury, as required by the policy, been forwarded to the

1  Chief through the chain of command?

2      One probable argument by defendants is that the reports were forwarded and

3  reviewed at the times written, but then returned to file. However, that argument fails for the

4  simple reason that if an officer receives a complaint today, the Chief would have to query

5  the files to determine what other use of force reports involve a particular officer. If not, how

6  does the Chief know which officers are involved in which incidents and what is the point of

7  the policy? Surely, Defendant has known for years that its alleged database limitations keep

8  it from complying with its own reporting and supervision policies. However, Defendant

9  simply continued to amass and insert records into its known to be broken system, rendering

10  record after record into an allegedly irretrievable state -- and precluding any person from

11  proving a claim based upon the contents of those records.

12      If, as Defendant says, the records are now truly irretrievable, Defendant is solely

13  responsible for spoliation of evidence necessary to establish Plaintiff's claims. It is well-

14  established that handling evidence in a manner such that it results in a condition *"beyond*

15  *the stage where its original state could be restored"* constitutes spoliation. Glover v. BIC

16  Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).  Plaintiff should not suffer the likely dismissal of

17  certain of his claims due to Defendant's intentional avoidance of responsibility. Rather, at

18  the appropriate time, Defendant should suffer an adverse inference due to the spoliation of

19  evidence likely to aid Plaintiff. (see Medical Lab. Mgmt. Consultants v. ABC, 306 F.3d

20  806, 824 (9th Cir. 2002), holding *"This power [of the Court] includes the power to sanction*

21  *the responsible party by instructing the jury that it may infer that the spoiled or destroyed*

22  *evidence would have been unfavorable to the responsible party.").*

23

24  **V.    CONCLUSION**

25      In light of its own Reportable Force policy, Defendant Culver City cannot on one

26  hand claim that it has adequate supervisory and disciplinary policies regarding the use of

27  force, yet on the other hand assert that producing discovery, which would be available due

28  to compliance with those same policies, is overly burdensome.  Simply put, Culver City

1 | "cannot have it both ways." Allowing Defendant to avoid producing the discovery needed
2 | by Plaintiff would have the cruel and chilling effect of allowing Defendant's own deliberate
3 | indifference to preclude liability for a policy rooted in deliberate indifference. Accordingly,
4 | Plaintiff's objection should be sustained.

5 |

6 | Respectfully submitted,                                    ORANGE LAW OFFICES

7 | DATE: 09 APRIL 2008.

8 |

9 |

10 |                                                            _____
                                                             Olu K. Orange, Esquire
                                                             Attorney for Plaintiff

11 | //

12 | //

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

**STATE OF CALIFORNIA**                    }
                                          } ss.
**COUNTY OF LOS ANGELES**            }

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 3435 Wilshire Blvd, Suite 2900, Los Angeles, California 90010.

    On April 9, 2008, I served the following Documents: PLAINTIFF'S FRCP RULE 72 OBJECTIONS AND NOTICE OF MOTION AND MOTION FOR REVIEW OF DISCOVERY ORDER ENTERED 4/2/08; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION; EXHIBITS upon the interested parties in this action in addressed as follows:

> **Justin R. Sarno, Esq.**
> Carpenter, Rothans & Dumont
> 888 S. Figueroa Street, Suite 1960
> Los Angeles, CA 90017
> Email: jsarno@crdlaw.com
> FAX: (213) 228-0401

[ ]   **(By Mail [Federal]) TO ANSWERING PARTY ONLY** I placed such envelope with postage fully prepaid in the UNITED STATES POSTAL SERVICE at Los Angeles, California.

[X]   **(By Electronic Mail [Mutual Agreement or Court Order])** I attached the above-described materials in PDF format to an e-mail message having a subject header including the case name and number in the instant case. I addressed said e-mail message to the recipient(s) by the e-mail address(es) specified above and transmitted the e-mail message by clicking "send."

[ ]   **(Via Facsimile)** By transmitting from my business address a true copy thereof from my sending facsimile machine addressed to each individual at its facsimile telephone number set forth above at the time indicated on the transmission verification line thereon.

**Executed on April 9, 2008, at Los Angeles, California.**

[X]   **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   **(Federal)** I declare that I am employed in the office of a member of the bar of this Court at whose discretion the service was made.

Olu K. Orange, Esq.

# DECLARATION OF
# OLU K. ORANGE

1    Olu K. Orange, Esq. , SBN: 213653
2    ORANGE LAW OFFICES
     Equitable Plaza Tower
3    3435 Wilshire Blvd., Suite 2900
     Los Angeles,  California 90010
4    Telephone: (310) 815-8600
5    Fax: (775) 416-9221

6

7    <u>Attorney for Plaintiff</u>

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11   EDWARDO RAMOS, | Case No.: CV07-4706 PA (JCx) |
| 12               Plaintiff, | DECLARATION OF OLU K. ORANGE IN SUPPORT OF PLAINTIFF'S FRCP |
| 13       vs. | RULE 72 OBJECTIONS AND NOTICE OF MOTION AND MOTION FOR |
| 14   THE CITY OF CULVER CITY, JOHN | REVIEW OF DISCOVERY ORDER |
| 15   MONTANIO, ADAM TREANOR, | ENTERED 4/2/08; MEMORANDUM OF POINTS AND AUTHORITIES; |
| 16   CHARLES KOFFMAN, ANDREW BELLANTE, MARCUS COLEN, BRIAN | DECLARATION; EXHIBITS |
| 17   HEMPEL, CURTIS MASSEY AND DOES 1 THROUGH 10 | |
| 18 | DATE:  May 5, 2008 |
| 19              Defendants. | TIME:   1:30 pm / LOC: Ct. #15 (Spring) |
| 20 | DISC CUT: 5/19/08 - TRIAL: 07/29/08 |
| 21 | **District Judge:** |
| 22 | **Hon. Percy Anderson** |
| 23 | Magistrate Judge: |
| 24 | Hon. Jacqueline Chooljian |

25               <u>**DECLARATION OF OLU K. ORANGE**</u>

26

27   **I, OLU K. ORANGE, declare as follows:**

28       1.  I am an attorney at law, duly licensed to practice in all of the Courts of the

PLAINTIFF'S RULE 72 MOTION DECLARATION

State of California, the United States District Court, Central District of California and the United States Court of Appeals for the Ninth Circuit. I am over 18 years of age. My business address is 3435 Wilshire Blvd., Los Angeles, CA 90010. If called and sworn as a witness, I could and would competently testify to the following based on personal knowledge or on my review of files regularly maintained by my office:

2. I personally attended the April 1, 2008, hearing on Plaintiff's Motion to Compel, set before Magistrate Judge Jacqueline Chooljian in USDC-CACD Case No. CV07-4706. At the hearing, in response to the Court's expression of concern regarding PLAINTIFF EDWARDO RAMOS' REQUESTS FOR PRODUCTION FROM DEFENDANT CITY OF CULVER CITY – SET ONE, REQUEST NO. 5," I requested that the Court construe the request so as to mirror Defendant City of Culver City's Reportable Force Policy as found in Exhibit A to the Declaration of Justin Sarno, filed on March 26, 2008, which the Court had before it.

3. The terms of the Reportable Force policy were explained to, and reviewed by, the Court -- and are as follows:

> "*d. Reporting and reviewing individual use of force incidents.*
>
> *Reportable Force Defined:*
> *An incident wherein officers pursuant to their official capacity use a level of force above the "Restrain/Detain" level of force, or any incident in which an injury or complaint of injury occurs during the course of contact with a subject.*
>
> *Officers Responsibilities:*
> *Officers using reportable force shall:*
> *1. Obtain medical assistance for officers or others who have sustained injuries or complaint of injury, or who have been rendered unconscious;*
> *2. Notify their supervisor as soon as circumstances permit.*
> *3. Document the use of force in an arrest/crime or officer's report. Officers observing a use of reportable force who do not believe the spirit and intent of the reporting requirements are being met shall advise their Supervisor.*

Page 2

*e. Supervisor Responsibilities:*
*When a supervisor becomes aware of the use of reportable force the supervisor shall:*
*1. Review the incident.*
*2. Document and forward the findings to the Chief of Police via the chain of command.*
 *(revised 3/93 G.O. 93-02) (revised 1/98)"*
 (see EXHIBIT G; pg. (bates# 000095))

4.  All exhibits attached to this declaration and objection/motion (EXHIBITS A THROUGH H) are true, correct and genuine.

I declare, under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing is true and correct, and that this declaration was executed this 9th day of April 2008, at Los Angeles, California.


Respectfully submitted,                      ORANGE LAW OFFICES

DATE: 09 APRIL 2008.

                                             Olu K. Orange, Esq., for Plaintiff

**STATE OF CALIFORNIA**                              }

**COUNTY OF LOS ANGELES**                    }   ss.

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 3435 Wilshire Blvd, Suite 2900, Los Angeles, California 90010.

     On April 9, 2008, I served the following Documents: DECLARATION OF OLU K. ORANGE IN SUPPORT OF PLAINTIFF'S FRCP RULE 72 OBJECTIONS AND NOTICE OF MOTION AND MOTION FOR REVIEW OF DISCOVERY ORDER ENTERED 4/2/08; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION; EXHIBITS upon the interested parties in this action in addressed as follows:

> **Justin R. Sarno, Esq.**
> Carpenter, Rothans & Dumont
> 888 S. Figueroa Street, Suite 1960
> Los Angeles, CA 90017
> Email: jsarno@crdlaw.com
> FAX: (213) 228-0401

[ ]  **(By Mail [Federal])** <u>**TO ANSWERING PARTY ONLY**</u> I placed such envelope with postage fully prepaid in the UNITED STATES POSTAL SERVICE at Los Angeles, California.

[X]  **(By Electronic Mail [Mutual Agreement or Court Order])** I attached the above-described materials in PDF format to an e-mail message having a subject header including the case name and number in the instant case. I addressed said e-mail message to the recipient(s) by the e-mail address(es) specified above and transmitted the e-mail message by clicking "send."

[ ]  **(Via Facsimile)** By transmitting from my business address a true copy thereof from my sending facsimile machine addressed to each individual at its facsimile telephone number set forth above at the time indicated on the transmission verification line thereon.

**Executed on April 9, 2008, at Los Angeles, California.**

[X]  **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]  **(Federal)** I declare that I am employed in the office of a member of the bar of this Court at whose discretion the service was made.

Olu K. Orange, Esq.

# EXHIBIT A

1   Olu K. Orange, Esq.
    SBN: 213653
2   ORANGE LAW OFFICES
    3435 Wilshire Boulevard
3   Suite 2900
    Los Angeles, CA 90010
4
    Tel: (213) 736-9900
5   Fax: (775) 416-9221

6   *Attorney for Plaintiffs*

7

8                   **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10  EDWARDO RAMOS                          Case No.: CV07-4706 PA  -- (JCx)

11                          *Plaintiff,*    PLAINTIFF EDWARDO RAMOS'
                                            REQUESTS FOR PRODUCTION FROM
12          vs.                             DEFENDANT CITY OF CULVER CITY
                                            – SET ONE
13  THE CITY OF CULVER CITY, JOHN
    MONTANIO, ADAM TREANOR,
14  CHARLES KOFFMAN, ANDREW
    BELLANTE, MARCUS COLEN, BRIAN
15  HEMPEL, CURTIS MASSEY AND DOES 1
    THROUGH 10
16
17                          *Defendants.*
18
19
20
21
22  PROPOUNDING PARTY:        PLAINTIFF EDWARDO RAMOS
23  RESPONDING PARTY:         DEFENDANT CITY OF CULVER CITY
24  SET NUMBER:               ONE
25  Pursuant to Rule Federal Rule of Civil Procedure 34, plaintiff hereby requests that
26  Defendant CITY OF CULVER CITY serve a response as required by Rule Federal Rule
27  of Civil Procedure 34 and produce for inspection and copying by plaintiff's attorney the
28

                                        1

documents and things listed below. Production is to be made at ORANGE LAW OFFICES, 3435 Wilshire Boulevard., Suite 2900, Los Angeles, CA 90010. Items must be produced within 30 days of service of this request, unless a different time has been ordered by the Court.

DEFINITIONS AND INSTRUCTIONS

1.     The term "WRITING" shall include all things defined in Federal Rule of Evidence 1001 and includes, without limitation, all written, recorded, transcribed, punched, taped (including computer tapes), filmed, photographed, videotaped, tape-recorded, printed or other matter, of every kind and description, however produced or reproduced, and however preserved, including information contained on computer disk, CD-ROM, computer hard drive, server, microfiche, film, videotape, audiotape or otherwise, including but not limited to the original and any copy and all drafts, of any letter, memorandum, telegram, report, manual, bulletin, study, record, statement, message, hand written note, calendar, diary, working paper, sketch, computer tape, data sheet, data card, tape recording, or any other written, printed or recorded matter, books, letters, pamphlets, correspondence, memoranda, reports, manuals, training bulletins, Special Orders, crime reports, preliminary investigation reports, investigation reports, arrest reports, evidence reports, equipment reports, vehicle reports, sergeant's reports, sergeant's daily reports, station commander's reports, supervisor's reports, watch commander's reports, lieutenant's reports, use of force reports, follow-up reports, Daily Work Sheet reports, Daily Field Activities Reports, employee injury reports, telephone calls, radio transmissions, surveillance video, surveillance audio, mobile audio-video unit recordings, personnel complaint investigations, citizen complaint investigations, chronologies, logs, notes, drafts of any written document, minutes of meetings, interview tapes and transcriptions, California Tort Claim investigations and all other physically preserved documentary information, regardless of the medium of preservation, however produced or reproduced,

2

from whatever source obtained, in the defendant's possession or control, or subject to its control, or to which it has access. "WRITING" shall also include originals and all non-identical copies. Copies which differ by reason of notations or electronic encodings thereon are considered "nonidentical" copies.

2.     "INCIDENT" includes the circumstances and events surrounding the alleged wrongful conduct, injury, or other occurrences giving rise to this action or proceeding.

3.     The term "YOU," "YOUR" or "YOURS" means the CITY OF CULVER CITY and includes any and all councils, commissions, committees, departments, officials, agents, employees and servants of the CITY OF CULVER CITY.

4.     "PERSON" includes a natural person, firm, association, organization, partnership, business, trust, corporation, entity or public entity.

5.     "SUBSTANCE" when referring to writings or communications means the author or originator, nature, specific content, time, date, frequency and duration thereof.

6.     When used to refer to PERSONS, The term "IDENTITY" means the first and last name, date of birth, rank and assignment, home and business ADDRESS, and home and business telephone numbers of such PERSON.

7.     When used to refer to WRITINGS, the term "IDENTITY" means the title of the WRITING, a description of the contents of the WRITING, the number of pages of the WRITING, and the IDENTITY of each person who has possession of the original and any copy of the WRITING.

8.     For the purposes of these interrogatories, wherever necessary to insure

completeness or accuracy, words importing the masculine gender include the feminine and neuter, words importing the neuter gender include masculine and feminine, and words importing the singular include the plural. If any part of an answer cannot be supplied, state that it is not being supplied and state the reason therefore, responding separately to each request.

9.      If you claim that any writing queried about is the subject of a conditional or absolute privilege or its existence or substance should not be disclosed for any other reason, file and serve a written response to this request on or before the above date, setting forth for each such writing: (a) its date; (b) its business description (letter, memorandum, etc.); (c) its author or addressor; (d) its recipient or addressee (including those to whom copies are shown as having been sent or given; (e) the subject matter or matters referred to in the writing, its length by reference to number of pages, seconds or frames, on whose stationary it is printed or issued; (f) the ground or reason for refusal to acknowledge its existence or substance; and (g) a statement as to why the privilege is applicable and the information required by <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).

10.     If you claim that any request calls for withholding of writings or poses an undue burden, prompt notice should be given to plaintiff as to the reason for that claim. Plaintiff requests the opportunity to review any such difficulty with the defendants to facilitate prompt production of available materials and a practicable and timely plan for production of producible materials.

11.     When answering this demand for production, provide any and all writings which are in your control, within your dominion, or available to you, regardless of whether these writings are in your possession or are possessed by your agents, servants, employees, attorneys, independent contractors, representatives, or others from whom you are capable

4

1    of deriving information, writings and/or materials.

2

3                           REQUESTS FOR PRODUCTION

4

5         YOU, please produce the following:

6

7    REQUEST NO. 1:   Two photographs of every one of your police officers, officials,

8    agents or employees who was present, at any time for any length of time, during any

9    portion of the incident. Provide one photograph taken within six months of today's date

10   and one photograph taken within six months of July 22, 2006. Both photographs must

11   clearly show the face of the subject and be labeled with the subject's name, height,

12   weight, hair color, eye color, date of birth, rank and assignment.

13

14   REQUEST NO. 2:   Every writing maintained, received or generated by you, or available

15   to you, which mentions, or is in any way related to, the incident. Be advised that

16   "writing" as defined herein above includes all audio and video recordings.

17

18   REQUEST NO. 3:   Every writing maintained, received or generated by you, or available

19   to you, which mentions, or is in any way related to, Edwardo Ramos. Be advised that

20   "writing" as defined herein above includes all audio and video recordings.

21

22   REQUEST NO. 4:   Every writing maintained, received or generated by you, or available

23   to you, related to police officer training, certification, continuing professional education,

24   review, authorization or approval thereof for every individual defendant named in this

25   lawsuit.

26

27   REQUEST NO. 5:   For the past seven years, every writing maintained, received or

28   generated by you, or available to you, related to, constituting, or purporting to be police

---

5

1 | reports of any kind (by way of example but not limitation: incident reports, arrest reports,
2 | crime reports, log entries, etc.) meeting all of the following criteria: (i) in any way
3 | mentioning any of the individual defendants named in this case, AND (ii) involving the
4 | arrest or detention of any person, AND (iii) wherein any person was indicated as injured
5 | and/or given medical treatment of any type or degree.

7 | REQUEST NO. 6:  For the past seven years, every writing maintained, received or
8 | generated by you, or available to you, related to any, discipline, sanctions, investigations,
9 | review, personnel complaints, claims for damages or other complaints made, or actions
10 | taken against, related to, or concerning any of the individual defendants named in this
11 | case whether taken or initiated by you, or by prior employing entities or agencies.

13 | REQUEST NO. 7:  Every writing maintained, received or generated by you, or available
14 | to you, related to patrol permission agreements, mutual aid agreements, joint policing
15 | agreements or police resource sharing agreements that you participate in currently, or that
16 | were in effect during the incident.

18 | REQUEST NO. 8:  For the past seven years, every writing maintained, received or
19 | generated by you, or available to you, related to, constituting, or purporting to be
20 | performance evaluations, professional histories, training records, background
21 | investigations, records of professional counseling or records of psychological or
22 | psychiatric counseling.

24 | REQUEST NO. 9:  Every writing maintained, received or generated by you, or available
25 | to you, related to agreements, reached in the past seven years, to settle claims or
26 | allegations of police misconduct by any of the individual defendants named in this case.

28 | REQUEST NO. 10: Your use of force manual, police procedures manual, investigative

6

1   manual, police department manual and all writings related to, or purporting to be rules
2   and regulations as to police practices, training, conduct and operations, both the current
3   versions, and the versions in effect as of January 1, 2006 through December 30, 2006.

4
5   REQUEST NO. 11: Any and all tangible things obtained by any of your agents or
6   employees from any person, including but not limited Plaintiff, in connection with the
7   incident.

8
9   DATE: 05 DECEMBER 2007.                          ORANGE LAW OFFICES
10
11
12
13                                                   Olu K. Orange, Esquire
                                                     Attorney for Plaintiff
14  //
15  //
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT B

1  Olu K. Orange, Esq. , SBN: 213653
2  ORANGE LAW OFFICES
   Equitable Plaza Tower
3  3435 Wilshire Blvd., Suite 2900
4  Los Angeles, California 90010
   Telephone: (310) 815-8600
5  Fax: (775) 416-9221

6
   Attorney for Plaintiff
7

8                **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | EDWARDO RAMOS,                          | Case No.: CV07-4706 PA (JCx)

12 |                                          | PLAINTIFF'S NOTICE OF MOTION
   |                        Plaintiff,        | TO COMPEL FURTHER RESPONSES
13 |          vs.                             | TO REQUESTS FOR PRODUCTION
   |                                          | PROPOUNDED ON DEFENDANT
14 | THE CITY OF CULVER CITY, JOHN            | CITY OF CULVER CITY;
15 | MONTANIO, ADAM TREANOR,                  | DECLARATION OF OLU K.
   | CHARLES KOFFMAN, ANDREW                  | ORANGE; [PROPOSED] JOINT
16 | BELLANTE, MARCUS COLEN, BRIAN            | STIPULATION; EXHIBITS;
   | HEMPEL, CURTIS MASSEY AND DOES           | SCHEDULING ORDER
17 | 1 THROUGH 10
18 |                                          | DATE: March 25, 2007
19 |                        Defendants.       | TIME: 9:30 am / LOC: Ct. #20 (Spring)
20 |                                          | DISC CUT: 5/19/08 - TRIAL: 07/29/08
21 |
22 |                                          | District Judge:
   |                                          | Hon. Percy Anderson
23 |                                          | **Magistrate Judge:**
24 |                                          | **Hon. Jacqueline Chooljian**

25 **PLEASE TAKE NOTICE** that on March 25, 2008, at 9:30 a.m., or as soon thereafter

26 as counsel may be heard in Courtroom 20 of the United States District Court, Central

27 District, located at 312 N. Spring Street, Los Angeles, California 90012, Plaintiff,

28 EDWARDO RAMOS, will and hereby does move this court for an order compelling

1  production of documents in response to Requests For Production propounded on
2  Defendant CITY OF CULVER CITY.

3       Per CACD-L.R. 37-2.4(a), this motion is made following multiple attempts by
4  plaintiffs counsel to resolve the issue informally, as required by Local Rule 37-1, et seq.
5  Defense counsel has twice set forth reasons to avoid meeting and conferring with
6  Plaintiff's counsel per Plaintiff's counsel's written requests. Further, after the second
7  occasion of avoidance, Defense counsel instructed Plaintiff's counsel that Plaintiff's
8  counsel would be contacted with a meeting date. Approximately thirty days have passed
9  and Defense counsel has not contacted Plaintiff's counsel with a date. [See Declaration
10 of Olu K. Orange].

11      This motion is based on the grounds set forth by Plaintiff EDWARDO RAMOS
12 in the accompanying [Proposed] Joint Stipulation. This motion is and will be made and
13 based on this Notice of Motion, the [Proposed] Joint Stipulation of Counsel, the
14 pleadings and records on file with this court, the Declaration of Olu K. Orange, any
15 evidence of which the Court may take judicial notice prior to or at the hearing of this
16 matter, and upon such oral or documentary evidence as may be presented at the hearing
17 of this motion.

18

19 Respectfully submitted,                    ORANGE LAW OFFICES
20 DATE: 26 FEBRUARY 2008.
21
22
23                                            Olu K. Orange, Esquire
                                             Attorney for Plaintiff
24
   //
25
26
27
28

1

### JOINT STIPULATION

2

## TABLE OF CONTENTS

3   I.   PARTIES INTRODUCTORY STATEMENTS………..…..……….……….. 4

4   II.  DISPUTED DISCOVERY REQUESTS …………………..…………….…..6

5        REQUEST FOR PRODUCTION NO. 3 ……………….... ……….……....3

6        REQUEST FOR PRODUCTION NO. 4 ……………..…..…………..……..15

7        REQUEST FOR PRODUCTION NO. 5 …………..…..……………..……..18

8        REQUEST FOR PRODUCTION NO. 6 ……………..………………..…….23

9        REQUEST FOR PRODUCTION NO. 9 ……………..…..…………..…… 27

10       REQUEST FOR PRODUCTION NO. 10 ..……………..……………….…..31

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION / JOINT STIPULATION

## I.   PARTIES' INTRODUCTORY STATEMENTS

### A.   PLAINTIFF'S INTRODUCTORY STATEMENT

On July 22, 2006, in Venice, California, the Plaintiff, Mr. Edwardo Ramos, was brutally beaten by two officers of the Culver City Police Department while four other officers stood by and watched. The beating occurred after a foot chase that ensued when Mr. Ramos ran from two of the officers upon their attempt to unlawfully detain him. After the beating, Mr. Ramos was taken by the officers from Venice to their jail in Culver City, and locked up. At no time did Mr. Ramos engage in any criminal activity.

Prior to the point at which Defendant officers attempted to detain Mr. Ramos, Mr. Ramos simply stood one foot away from his mother's pick up truck and looked in the window to see if he might have locked his keys inside. Because Mr. Ramos looked in the window of the truck, was a nineteen year-old man of Latino ethnicity and wore a gray button-down shirt and blue jeans, Defendants TREANOR, KOFFMAN, BELLANTE, COLEN and MASSEY (hereafter "Defendants") attempted, wholly unlawfully, to detain him. Upon running from the officers, Mr. Ramos was chased down, and brutally beaten in violation of his civil rights.

On July 20, 2007, Mr. Ramos commenced this action in response to the violations of his rights. On December 5, 2007, Plaintiff's counsel served upon defendants (through counsel) discovery requests entitled "PLAINTIFF EDWARDO RAMOS' REQUESTS FOR PRODUCTION FROM DEFENDANT CITY OF CULVER CITY – SET ONE," consisting of eleven separate requests for materials. (ORANGE DECL. ¶2). On January 4, 2008, Defendant Culver City (hereafter "Culver City') served in response, Defendant City of Culver City's Response to Request for Production of Documents [Set One]. Culver City's Responses to Plaintiff's Requests (hereafter "Responses" and "Requests") consisted in overbroad, boilerplate, and legally unjustifiable objections resulting in the withholding of virtually the entire universe of responsive documents. (ORANGE DECL. ¶3).

NOTICE OF MOTION / JOINT STIPULATION

On January 18, 2008, pursuant to CACD Local Rule 37-1, Plaintiff's counsel, Olu K. Orange (hereafter "Orange"), faxed a meet and confer letter to counsel for Culver City, Justin Sarno (hereafter "Sarno"), explaining in detail (a) the history of the discovery requests that Orange had served upon Culver City, (b) the deficiencies in the answers provided by Culver City, (c) the legal arguments and authority on the basis of which further response were due, and (d) Orange's request for a meeting by the method and within the time frame set forth by the rule - in person, within 10 days. (ORANGE DECL. ¶5 / EXHIBIT A). On January 22, 2008, Orange received a letter from Sarno indicating that Sarno could not meet and confer within the time period set forth by LR 37-1 due to a trial commitment. (ORANGE DECL. ¶6 / EXHIBIT B). The same day, January 22nd, Orange responded in writing via fax that he would meet with ANY of the three defense counsel whose names had appeared upon the filings in this matter, and that it was crucial to meet within the time period set forth by the rules. (ORANGE DECL. ¶7 / EXHIBIT C). The next day, on January 23rd, Sarno called Orange to indicate that a meeting would be possible for the next day and to simply call and schedule it with a Secretary named "Sylvia." Orange called and scheduled the meeting for 11:00 a.m. and sent Sarno confirmation, to which Sarno replied, "Perfect - will see you then." (ORANGE DECL. ¶8 / EXHIBIT D).  10 minutes later, Sylvia called Orange to confirm with him that the meeting was confirmed with Sarno. (ORANGE DECL. ¶8). The next day, on January 24th, at 8:58 a.m., Sylvia called Orange and left him a message explaining that the 11:00 a.m. meeting had been cancelled because other defense counsel, Rothans, was unavailable. Sylvia, indicated that "we will be in touch with you probably within the next week or so to get a mutually convenient date." (ORANGE DECL. ¶9). Since then, neither Sylvia, nor Rothans, nor Sarno have contacted Orange about meeting and conferring (ORANGE DECL. ¶9). The ten-day period has long expired.

Culver City's continuing non-responsiveness may only be interpreted as recalcitrance. Plaintiff's Requests deal directly with the events that are the subject matter

NOTICE OF MOTION / JOINT STIPULATION

of this lawsuit. Plaintiff's requests are narrowly tailored to elicit relevant evidence or information reasonably calculated to lead to the discovery of relevant evidence. No privilege protects the universe of responsive documents at issue from production. Moreover, Culver City's failure to furnish a privilege log, or functional equivalent, and a competent declaration, to account for documents withheld pursuant to a privilege, constitutes an effective waiver of any applicable privilege. For any and all of these reasons, this court should compel the production of all responsive documents.

**B.    DEFENDANT'S INTRODUCTORY STATEMENT**

*[DEFENDANT FAILED TO MEET AND CONFER PER U.S.D.C. - CACD Local Rule 37 - See DECLARATION OF ORANGE (ATTACHED)]*

## II.    <u>DISPUTED DISCOVERY REQUESTS</u>

**<u>REQUEST FOR PRODUCTION NO. 3:</u>**

Every writing maintained, received or generated by you, or available to you, which mentions, or is in any way related to, Edwardo Ramos. Be advised that "writing" as defined herein above includes all audio and video recordings.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 3:</u>**

OBJECTION:

This request is overly broad and is not limited as to time. Furthermore, this request is overly broad as it is not limited to this underlying incident, and could theoretically encompass any incident in Plaintiff RAMOS' history. Additionally, this request is overbroad as to the phrase "available to you," as this necessarily includes any conceivable writings including (but not limited to) Department of Justice information, wrap sheets, and information contained in infinitely various databases (potentially confidential or otherwise) and in reference to unrelated incidents that have no relevance

to the subject matter of this litigation. As a result, such a request violates the right of privacy in unknown individuals in any such writings, pursuant to the 5th and 14th Amendments to the U.S. Constitution, as well as Article I, Section 1 of the California Constitution.

Finally, this request potentially seeks privileged information, constitutes an invasion of the right of privacy of employees of the CITY OF CULVER CITY, and violates the tenets of Pitchess v. Superior Court, 11 Ca1.3d 531 (1974), as well as the federal right of privacy as guaranteed by the U.S. Constitution, amendments V and XIV, respectively. Furthermore, said information is protected by the Official Information Privilege, Fed. Rules Civ. Proc. Rule 26(c), 28 U.S.C.A.

However, in the spirit of cooperation and discovery and without waiver of the above-stated objections, responding party responds as follows: Defendant CITY OF CULVER CITY hereby produces Los Angeles County Booking and Property Record; Arrest Report Culver City Police Department; Incident Report OCA #06-004051; Incident Report Additional Persons; Incident Report Narrative; Supplemental/Follow Up Investigation; Brotman Medical Center, Emergency Dept. Discharge, Instructions & Referral, Claim for Damages to City of Culver City By Edwardo Ramos. [Attached hereto as Exhibit "A"].

**PLAINTIFF'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 3:**

A.   The Request is Reasonably Calculated to Lead to the Discovery of Relevant Evidence and is Not Overbroad

By its terms, the Request is clearly delineated as to the person to whom it pertains. That person is the plaintiff in this case. Additionally, as defendant contends, it does cover multiple databases. However, such coverage is proper. Any information about Mr. Ramos which defendants may have had at their disposal, or available to them, at various points in time, is crucial to the determination of the reasonableness of defendants' actions or inactions toward Mr. Ramos and certainly discoverable.

1   Moreover, as Mr. Ramos may testify in this action, information possessed by or
2   available to defendants about him or his history is discoverable and the fact that it may
3   or may not be in a database does not shield it. (see <u>Ryan v. Board of Police Comm'rs</u>, 96
4   F.3d 1076, 1083 (8th Cir. 1996), *"We believe that the request for production was clear*
5   *and explicit ... any documentation obtained from the databases and showing Ryan's*
6   *criminal record or the Rochester arrest fell squarely within the scope of the request.*

7        *The evidence regarding Ryan's Rochester arrest was a key component of the*
8   *defense at trial. By waiting until trial to disclose this information, the officers and the*
9   *Board hindered the efforts of counsel for Ryan ... to effectively prepare their case and to*
10  *effectively address the legal issues surrounding the admissibility of the evidence.*
11  *Further, the strategy adopted by the officers and the Board virtually assured that the*
12  *district court would not be in a position to make a well-reasoned decision regarding the*
13  *legal issues surrounding the admissibility of the evidence. Further, it is evident that the*
14  *actions of counsel for the officers and the Board violated the Federal Rules of Civil*
15  *Procedure.").*

16

17  B.   <u>The "Official Information Privilege" Does Not Protect the Information Withheld</u>
18       <u>by Defendants</u>

19

20        Defendants invoked the official information privilege for every Request with
21  respect to which they refused to produce documents. It is well-settled that privileges
22  generally should be narrowly construed and carefully balanced against the
23  overwhelming judicial interest in the search for truth and the just resolution of disputes.
24  *See generally* <u>United States v. Nixon</u>, 418 U.S. 683, 710 (1974) ("Whatever their
25  origins, these exceptions to the demand for every man's evidence are not lightly created
26  nor expansively construed, for they are in derogation of the search for truth."). That
27  latter interest could not be more weighty than cases such as this one, which involve
28  constitutional violations committed by official governmental agencies, via the use of

NOTICE OF MOTION / JOINT STIPULATION

1   force, of private persons' basic rights. Defendants' invocation of the privilege was

2   boilerplate, unjustified and unjustifiable, and lacking even the pretense of individuation

3   of reasons or subject matter. Defendants make no attempt whatsoever to argue that

4   particular responsive materials a) fall within a privilege or b) are sufficiently important

5   to outweigh the interests of truth and justice and warrant the application of a given

6   privilege. The applicable law and the nature of the information sought militate against

7   application of an official information privilege in the instant case.

8

9       i.       The formal requirements for the assertion of the official information

10              privilege are not met.

11      A defendant's failure to provide an adequate affidavit meeting threshold

12  requirements *at the time it files and serves its response* to the discovery request waives

13  the privilege in its entirety and justifies complete disclosure of the requested documents.

14  In such circumstances, no in camera inspection should occur. Miller v. Pancucci, 141

15  F.R.D. 292,  301 (C.D. Cal 1992); Kelly v. City of San Jose, 114 F.R.D. 653, 669 (N.D.

16  Cal. 1987).

17      A privilege is deemed waived when not properly asserted, i.e., in a manner that is

18  timely and that makes it possible to discern why and for what the privilege is being

19  asserted. *See, e.g.,* Eureka Financial Corp. v. Hartford Accident and Indem. Co., 136

20  F.R.D. 179, 183-83 (E.D. Cal. 1991) (*a "blanket objection" to each document on the*

21  *ground of privilege with no further description is clearly insufficient to establish*

22  *privilege*); Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir.

23  1984)(*per curiam*), cert. dismissed, 469 U.S. 1199 (1985)(privilege waived when

24  defendant did not make a timely and sufficient showing that the documents were

25  protected by privilege). Furthermore, the failure to specifically identify documents

26  requested through discovery to which claims of privilege are asserted are fatal to

27  defendant's claim of privilege. In re Aircrash Disaster Near Roselawn, Ind. Oct. 31,

28  1994, 172 F.R.D. 295, 308 (N.D.Ill. 1997).

NOTICE OF MOTION / JOINT STIPULATION

1   More recently, this Circuit announced: "We hold that boilerplate objections or
2   blanket refusals inserted into a response to a Rule 34 request for production of
3   documents are insufficient to assert a privilege." <u>Burlington Northern and Santa Fe</u>
4   <u>Railway Co. v. United States District Court</u>, 408 F.3d 1141, 1149 (9th Cir. 2005).

5   The requirements to justify nondisclosure are even more onerous in the official
6   information privilege context. The rule of this Circuit is that to the extent that any
7   privilege protecting governmental information per se is to apply, it must be asserted by
8   the <u>head of the appropriate agency</u> or department, after she has <u>personally reviewed</u> the
9   contents of the documents and has <u>personally formed the view</u> that "on the grounds of
10   public interest they ought not to be produced." <u>Kerr v. United States District Court</u>, 511
11   F.2d 192, 198 (9th Cir. 1975) (*quoting* <u>United States v. Reynolds</u>, 345 U.S. 1, 7-8
12   (1953)). <u>Kerr</u> holds that absent a "formal claim of privilege, lodged by the head of the
13   department which has control over the matter, after actual personal consideration by that
14   officer," no privilege protects the agency's information. <u>Id</u>. (quoting Reynolds). Not a
15   shred of evidence exists to show - indeed, no assertion is made to represent - that such a
16   personal review by the appropriate agency head occurred here. <u>Kerr</u> is <u>unequivocal</u> that
17   the "governmental privilege must be formally asserted and delineated in order to be
18   raised properly," in the manner just described. <u>Id</u>. Indeed, the circumstances of <u>Kerr</u> are
19   remarkably similar to the instant case. There, the Circuit held that:

20   *In the civil rights suit, petitioners' counsel merely raised a blanket*
21   *objection covering any and all documents in request numbers 7, 14, 15,*
22   *18, 20, 21, and 22. Formally claiming a privilege should involve*
23   *specifying which documents or class of documents are privileged and for*
24   *what reasons . . .* <u>Id</u>.

25

26   Whether or not the precise requirements of the <u>Kerr</u> rule are followed, it is
27   uncontroversial that some form of threshold requirements precede assertion of the
28   official information privilege. See <u>Kelly at 669</u>, (suggesting that an appropriate

Page 10

1   responsible official of the agency must author a declaration regarding the documents for

2   which the privilege is claimed, even if the department 'head' does not). There is no

3   question that no attempt whatever has been made by defendants to meet these

4   requirements. Defendants have produced no declaration regarding the documents

5   withheld pursuant to the official information privilege, from any official, at any time.

6   Therefore, this court should compel the production of all responsive documents on the

7   foregoing basis alone.

8

9       ii.   The scope of the official information privilege is highly abrogated under

10            the applicable federal law.

11      First, it is well-settled in this Circuit that questions of privilege in cases such as

12   this one are resolved by federal law. See, e.g., Kerr v. United States District Court, 511

13   F.2d 192, 197 (9th Cir. 1975) (*holding that in a civil rights action based upon federal*

14   *question jurisdiction, federal law controls the application of a governmental or official*

15   *information privilege to California agencies, and not even considering California law as*

16   *persuasive authority*); Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033-34 (9th Cir.

17   1990) (*applying "[f]ederal common law" to resolve question of official information*

18   *privilege in case against police department, and making no reference to state statutes or*

19   *decisions whatever*); Miller v. Pancucci, 141 F.R.D. 292, 299 (C.D. Cal. 1992)

20   (rejecting entirely any reliance upon California law, where "*[a]pplying California law*

21   *would result in Plaintiffs' access to police files being severely limited*"). Thus,

22   defendants' reliance upon California law and state court decisions such as Pitchess is

23   misplaced.

24      Second, it is widely recognized that the official information privilege specifically

25   - even more than privileges generally - must be narrowly and carefully construed,

26   because the most basic presumptions of our polity are called into question by its

27   overbroad application. Judging from the total absence of specific reasons in its

28   Responses, it seems that defendants have taken the simplistic position that any materials

NOTICE OF MOTION / JOINT STIPULATION

1  produced by a police department or government agency are "presumptively privileged."
2  This is simply false. The Circuit has repeatedly recognized that "this is only a qualified
3  privilege, contingent upon the competing interests of the requesting litigant . . ." Kerr,
4  511 F.2d at 198.

5       And as the Northern District put it,

6       *In a society where government is supposed to be open, where it is*
7       *supposed to be the servant of and responsive to the people, and where*
8       *statutes supposedly assure the public access to most information*
9       *developed by government . . . does it make sense for courts to create a*
10      *body of privilege doctrine that sweeps so broadly that virtually every*
11      *datum collected by government is presumptively shielded from*
12      *disclosure?*

13

14 Kelly v. City of San Jose, 114 F.R.D. 653, 659 (N.D. Cal. 1987). The information
15 withheld by defendants is not presumptively privileged.

16

17      iii.   This court should apply a balancing test pre-weighted in favor of
18           disclosure in order to determine whether the privilege, particularly
19           disfavored in civil rights cases against police departments, exists with
20           respect to a given category of information.

21      The rule is that unlike in the case of absolute privileges (such as the attorney-
22 client privilege), the court should, as a matter of course, engage in a balancing test
23 weighing the potential benefits of disclosure against its potential disadvantages, with the
24 inquiry pre-weighted in favor of disclosure. It is important to note that this balancing
25 test determines whether the privilege exists with respect to a given class of documents or
26 material in the first place; there simply is no privilege until the court has determined that
27 on balance, disclosure is likely to create more harm than benefit. Sanchez, 936 F.2d at
28 1034 (to "determine whether the information sought is privileged, courts must weigh the

*potential benefits of disclosure against the potential disadvantages"*); <u>Miller v. Pancucci</u>, 141 F.R.D. at 300 (citing the Sanchez balancing test with respect to the official information privilege, and holding that *"[t]his balancing test has been moderately pre-weighted in favor of disclosure"*); <u>Kelly v. City of San Jose</u>, 114 F.R.D. 653, 661 (N.D. Cal. 1987) (urging adoption of *"a balancing approach that is moderately preweighted in favor of disclosure"* to determine whether the official information privilege exists with respect to a given class of police documents in civil rights cases).

The legal and policy reasons for these limitations upon the official information privilege were explored at length by the Northern District in <u>Kelly v. City of San Jose,</u> 114 F.R.D. 653 (N.D. Cal. 1987), a decision ordering the disclosure of confidential information contained in police files in a civil rights case against a police department. The district court's historical and conceptual exploration of the development of the privilege revealed that a unified law of the official information privilege is still fledgling. Differences between jurisdictions have arisen for this reason: courts have picked from a hodge-podge of sometimes ill-fitting doctrine, with such disparate roots as state secrets, military secrets, and executive privilege. The Northern District pointed out that these doctrines are largely ill-suited to information or materials in the custody of police departments, because the interests supporting protection of the information are not as strong in the police context. <u>Id</u>. at 657-58. That court then focused its analysis on the role of the official information privilege in *"civil rights cases against police officers or departments,"* cautioning against its incautious or overbroad application. Id. at 660. The court eventually arrived at the conclusion that:

> *. . . [T]he public interests in the categories favoring disclosure (the policies underlying our civil rights law, public confidence in the court system, and doing justice in individual cases) clearly outweigh the public interests in favor of secrecy (e.g., not comprising procedures for self-discipline within police forces or the privacy rights of officers or citizen*

Page 13

1   *complainants).* <u>*Id*</u>. *at 661 [emphasis added].*

2

3   Therefore, the <u>presumption</u> - heightened in civil rights cases involving police

4   documents **-** prior to the court's consideration of the effects of disclosure in a particular

5   case, is in favor of disclosure.

6

7   iv.   <u>Given the necessity of disclosure and the lack of enumerated disadvantages</u>

8         <u>to disclosure, especially under a protective order, Plaintiffs are entitled to</u>

9         <u>discover the information sought under the balancing test articulated by the</u>

10        <u>Circuit and this court.</u>

11   Given that defendants have objected to virtually every category of information

12   and document requested by Plaintiff, there can be little question that the benefits of

13   disclosure are vast, in that they determine whether Plaintiff will be able to effectively

14   prosecute his case. Defendants did acts alleged as violations of civil rights in the events

15   giving rise to this lawsuit, and they are withholding materials that go to the very heart of

16   Plaintiff's complaint. Defendants' recalcitrance in producing these materials effectively

17   cripples Plaintiff's ability to prove his case.

18   Finally, the entry of a protective order will completely ameliorate any potential

19   concerns regarding disclosure. The Circuit has held that "especially where protective

20   measures are taken," the considerations weigh in favor of disclosure. <u>Kerr</u>, 511 F.2d at

21   198. See also <u>Kelly</u>, 114 F.R.D. at 662 ("the weight of some of the interests in the law

22   enforcement category may be reduced because courts routinely enter tightly crafted

23   protective orders . . .").

24

25   C.   <u>No Privacy Interest Protest the Requested Material from Discovery</u>

26   There is no generalized governmental right to privacy. To the extent

27   governmental privacy concerns protect materials from discovery, those come under the

28   aegis of the official information privilege, discussed <u>supra</u>. As for third-party privacy

concerns, defendants have not specifically articulated any, and Plaintiff is at a loss to construct what they might be. To the extent that defendants contend that the third-party privacy rights of other persons who may be mentioned in police department materials regarding the subject matter sought (Mr. Ramos) would be compromised by responding to this Request, the interests in disclosure almost surely outweigh those interests -- whatever they may be, though unspecified by defendants. Defendants may not withhold broad swaths of responsive materials wholesale. Finally, the entry of an appropriate protective order, tailored to address specific items or well-defined categories of information, will completely ameliorate any valid privacy concerns - when finally articulated by defendants.

**DEFENDANT'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 3:**

*[DEFENDANT FAILED TO MEET AND CONFER PER U.S.D.C. - CACD Local Rule 37 - See DECLARATION OF ORANGE (ATTACHED)]*

**REQUEST FOR PRODUCTION NO. 4:**

Every writing maintained, received or generated by you, or available to you, related to police officer training, certification, continuing professional education, review, authorization or approval thereof for every individual defendant named in this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

OBJECTION:

This request is overly broad as to the meaning and scope of its enumerated sub-categories. For example, the request seeks documents related to categories ranging from "police officer training," to "certification" to "continuing professional education" to "review," "authorization," and "approval" thereof. As such, this request begs the question as to what topic of training, certification, or continuing professional education this request suggests, if any. Furthermore, this request is overly broad as to its time-

Page 15

frame, which is otherwise unspecified. More so, this request is vague, ambiguous and unintelligible as phrased. In particular, the terms and phrases "training," "certification," "continuing professional education," "review" and "authorization" are vague, ambiguous and unintelligible so as to make a response impossible without speculation as to the meaning of the request. Additionally, this request seeks information which is beyond the scope of permissible discovery, where such information is not relevant to the subject matter or reasonably calculated to lead to the discovery of admissible evidence. Moreover, this request contains subparts and is more than a single request as it relates to numerous discrete topics [handling and charging individuals] and numerous discrete categories of materials, and as such is not set forth with "reasonable particularity." [See F.R.C.P. Rule 34(b); see also Safeco of America v. Rawstron, 181 F.R.D. 441 (C.D.Cal. 1998)]. Furthermore, this request is overly burdensome and oppressive and without reasonable limitation in its time and scope, as it does not specify the applicable time period for which this request is directed and potentially encompasses policies that are not relevant to the instant litigation. See Konczakowski v. Paramount Pictures, Inc., 20 F.R.D. 588 (D.C. N.Y. 1957) (finding that requests were objectionable where information sought related to activities of defendants for period of more than twenty years).

**PLAINTIFF'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 4:**

A.    The Request Is Not Vague or Uncertain

The Request is straightforward and clear. The phrases which defendants contend are vague and/or ambiguous must be read alongside their 'sibling' phrases within the logical structure of the sentences in which they appear, and which shed light on their specific meaning in context. This is clearly a query about police officers' training, education and evaluations. The terms "review" and "training" and "certification" and "continuing education" are modified by the adjective "professional" in the presented context. Further, in common usage, such terms as here modified by "professional" are

1  used to describe regular professional evaluations and education received in the course of

2  one's job. The term "authorization" in this context (with its sibling "approval") clearly

3  refers to authorizations of professional education for police personnel named in this

4  lawsuit. Finally, even if this court finds this Request to be vague or uncertain, as framed,

5  defendants' proper remedy is to produce documents as to the portions of the Request

6  which are understandable, and to register its objections - not to withhold all responsive

7  documents wholesale.

8

9  B.    The Request Is Not Overbroad

10          The entire course of training, review, evaluation and education for named

11 individual defendants is relevant to the subject matter of the lawsuit. For example, if a

12 given police officer never in his career received use of force, first amendment, profiling

13 or colleague intervention training, that would be relevant to liability of the appropriate

14 entity defendant. It would be difficult to place a temporal cut-off on the relevance of

15 such information. Even if this court finds this Request to exceed the permissible scope

16 of discovery, as framed, defendants' proper remedy is to produce documents within the

17 permissible scope and to register their objections – not to withhold all responsive

18 documents wholesale.

19

20 C.    The Request Seeks Relevant Evidence or Materials Reasonably Calculated to

21        Lead to the Discovery of Relevant Evidence

22          Defendants fail to explain why this Request is not relevant or reasonably

23 calculated to lead to the discovery of relevant evidence. The training and education of

24 individual police officers who were actors in the events giving rise to this lawsuit are

25 relevant to a) that individual's level of knowledge concerning the situations involved,

26 and thus, the nature of that individual's mental state with respect to his/her acts; and b)

27 the entity defendants' potential liability for failure to train. These are merely examples

28 of the potential relevance of such information. Even if this court finds this Request to

Page 17

1  exceed the permissible scope of discovery, as framed, defendants' proper remedy is to

2  produce documents within the permissible scope and to register its objections – not to

3  withhold all responsive documents wholesale.

4

5  D.  The "Official Information Privilege" Does Not Protect the Information Withheld

6      by Defendants

7      Plaintiff hereby incorporates in full his argument with respect to defendants'

8  invocation of the official information privilege, set forth supra in Plaintiff's Contentions

9  Re Request for Production No. 3, Section B.

10

11 E.  No Privacy Interest Protest the Requested Material from Discovery

12     There is no generalized governmental right to privacy. To the extent

13 governmental privacy concerns protect materials from discovery, those come under the

14 aegis of the official information privilege, discussed supra. As for third-party privacy

15 concerns, defendants have articulated none and none are impediments with respect to

16 this Request. As for privacy rights of the individual defendants, those are nonexistent

17 with respect to matters relevant to the lawsuit, and in any case, the interests in disclosure

18 outweigh any such interests. Defendants' proper remedy is to produce the materials

19 subject to the provisions of an appropriate protective order, not to withhold all

20 responsive materials wholesale.

21

22 **DEFENDANT'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 4:**

23 *[DEFENDANT FAILED TO MEET AND CONFER PER U.S.D.C. - CACD Local Rule*

24 *37 - See DECLARATION OF ORANGE (ATTACHED)]*

25

26 **REQUEST FOR PRODUCTION NO. 5:**

27 For the past seven years, every writing maintained, received or generated by you, or

28 available to you, related to, constituting, or purporting to be police reports of any kind

Page 18

1   (by way of example but not limitation: incident reports, arrest reports, crime reports, log

2   entries, etc.) meeting all of the following criteria: (i) in any way mentioning any of the

3   individual defendants named in this case, AND (ii) involving the arrest or detention of

4   any person, AND (iii) wherein any person was indicated as injured and/or given medical

5   treatment of any type or degree.

6

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 5**:

8   OBJECTION:

9   This request is so overbroad and multifarious as to be unintelligible, oppressive,

10  burdensome, and harassing. For example, this request seeks essentially _all police reports_

11  from _all officers_ for the past seven (7) years. There is no express delimitation on the

12  definitional scope of this request in relation to subject matter. Instead, this request seeks

13  all police reports, or anything "purporting" to be a police report (which is vague and

14  ambiguous) from all officers who were involved in this litigation for the past seven (7)

15  years. The overbreadth of this request, given the amount of officers purportedly

16  involved, is made even more mathematically burdensome and compound by its

17  concomitant request for police reports involving "arrests" or "detentions" and/or any

18  instances in which any person was "injured" or "given medical attention." The

19  permutations of potentially responsive documents are so numerous and multifaceted that

20  this Defendant cannot be reasonably requested to respond to it.

21

22  Procedurally, this request contains multiple subparts, including nonexclusive

23  additive sub-categorizations (three sub-sections, to be specific), and is therefore more

24  than a single request as it relates to numerous discrete topics, and as such is not set forth

25  with "reasonable particularity." [See F.R.C.P. Rule 34(b); see also Safeco of America v.

26  Rawstron, 181 F.R.D. 441 (C.D.Cal. 1998)].

27

28  Furthermore, this request is overly burdensome and oppressive and without reasonable

1   limitation in its scope, as it seemingly seeks copies of all "police reports" against all
2   named defendants, and could potentially include voluminous amounts of documentation
3   which would not be relevant to the instant litigation. See Konczakowski v. Paramount
4   Pictures, Inc., 20 F.R.D. 588 (D.C. N.Y. 1957) (finding that requests were objectionable
5   where information sought related to activities of defendants for period of more than
6   twenty years).

7

8   Also, this interrogatory is improperly used in an oppressive manner, as a responding
9   party should not be required to perform burdensome labors, or execute difficult and
10  expensive tasks, in searching for facts and classifying and compiling data. See
11  Aktiebolaget Vargos v. Clark, 8 F.R.D. 635 (D.C. Col. 1949). Furthermore, this request
12  potentially seeks privileged information, constitutes an invasion of the right of privacy
13  of employees of the CITY OF CULVER CITY, and violates the tenets of Pitchess v.
14  Superior Court, 11 Cal.3d 531 (1974), as well as the federal right of privacy as
15  guaranteed by the U.S. Constitution, amendments V and XIV, respectively.
16  Furthermore, said information is protected by the Official Information Privilege, Fed.
17  Rules Civ. Proc. Rule 26(c), 28 U.S.C.A.

18

19  **PLAINTIFF'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 5:**
20  A.   The Request Is Not Vague or Uncertain
21       The Request is straightforward and clear. It seeks police reports involving any of
22  the individual officers in this case, where said reports involve the arrest or detention of
23  any person, and such person was injured or needed medical treatment. Moreover,
24  defendants do not claim to misunderstand any particular words or phrases.

25

26  B.   The Request Is Neither Overbroad Nor Overly Burdensome
27       Defendants' boilerplate time-frame objection strikes a particularly discordant note
28  with respect to this Request, since the Request clearly delineates a seven-year period for

Page 20

the materials requested, which is both specific and reasonable. It also limits itself to the named officers in this litigation. Further, the only category of documents requested, is that which would detail injuries and/or medical treatment and be probative of excessive or discriminatory uses of force.

Additionally, defendants seem to argue that this request imposes something undoable because it requires the examination of, and production of, reports detailing violence or patterns of violence by certain officers upon detainees over a course of multiple years. If defendants maintain their claim of being incapable of effectively tracking reports involving uses of force by police officers, Plaintiff will make an appropriate motion that an adverse inference be drawn against defendants as to a policy of ineffective supervision and discipline. Otherwise, defendants' stonewalling will eventually short-circuit significant aspects of Plaintiff's municipal liability claims. Even if this court finds this Request to exceed the permissible scope of discovery, as framed, defendants' proper remedy is to produce documents within the permissible scope and to register its objections – not to withhold all responsive documents wholesale.

C.   The Request Seeks Relevant Evidence or Materials Reasonably Calculated to Lead to the Discovery of Relevant Evidence

Defendants fail to explain why this Request is not relevant or reasonably calculated to lead to the discovery of relevant evidence. The allegations of Plaintiff in this case are essentially that he was racially profiled, chased down and brutally beaten because of his race and choice of clothing. In light of such excessive force and equal protection claims, evidence tending to show, (1) a noticeable pattern or percentage of arrestees/detainees suffering injury [excessive force], or (2) arrestees/detainees of certain racial backgrounds suffering injuries as opposed to, or with more frequency than others [equal protection] is certainly probative and calculated to lead to the discovery of relevant evidence. These are merely examples of the potential relevance of such

1  information. Even if this court finds this Request to exceed the permissible scope of

2  discovery, as framed, defendants' proper remedy is to produce documents within the

3  permissible scope and to register its objections – not to withhold all responsive

4  documents wholesale.

5

6

7  D.  The "Official Information Privilege" Does Not Protect the Information Withheld

8  by Defendants

9  Per California Public Records Act, Cal. Gov't Code § 6250, et seq., and City of

10  Santa Rosa v. Press Democrat, 187 Cal. App. 3d 1315 (Cal. Ct. App., 1986), the

11  California legislature requires California public agencies to make records such as these

12  available to the public. Furthermore, Plaintiff hereby incorporates in full his argument

13  with respect to the official information privilege, set forth supra in Plaintiff's

14  Contentions Re Request for Production No. 3, Section B.

15

16  E.  No Privacy Interest Protest the Requested Material from Discovery

17  There is no generalized governmental right to privacy. To the extent

18  governmental privacy concerns protect materials from discovery, those come under the

19  aegis of the official information privilege, discussed supra. As for third-party privacy

20  concerns, defendants have articulated none and none are impediments with respect to

21  this Request. As for privacy rights of the individual defendants, those are nonexistent

22  with respect to matters relevant to the lawsuit, and in any case, the interests in disclosure

23  outweigh any such interests. Defendants' proper remedy is to produce the materials

24  subject to the provisions of an appropriate protective order, not to withhold all

25  responsive materials wholesale.

26

27  **DEFENDANT'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 5:**

28  *[DEFENDANT FAILED TO MEET AND CONFER PER U.S.D.C. - CACD Local Rule*

NOTICE OF MOTION / JOINT STIPULATION

1    *37 - See DECLARATION OF ORANGE (ATTACHED)]*

2

3    **REQUEST FOR PRODUCTION NO. 6:**

4    For the past seven years, every writing maintained, received or generated by you, or

5    available to you, related to any, discipline, sanctions, investigations, review, personnel

6    complaints, claims for damages or other complaints made, or actions taken against,

7    related to, or concerning any of the individual defendants named in this case whether

8    taken or initiated by you, or by prior employing entities or agencies.

9

10    **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

11    OBJECTION:

12    This request is overbroad in scope, as it relates to a sprawling series of sub-categories,

13    including documents related to "discipline," "sanctions," "investigations," "review,"

14    "personnel complaints," "claims for damages," or other "complaints." What is more, this

15    overbroad request seeks all writings from all officers in this case relative to these sub-

16    categories, which as phrased, is oppressive, burdensome, and harassing.

17

18    This request is vague, ambiguous and unintelligible as phrased. In particular, the terms

19    and phrases "discipline," "sanctions," "investigations," "review" and "personnel

20    complaints" are vague, ambiguous and unintelligible so as to make a response

21    impossible without speculation as to the meaning of the request. Additionally, this

22    request seeks information which is beyond the scope of permissible discovery, where

23    such information is not relevant to the subject matter or likely to lead to the discovery of

24    admissible evidence.

25

26    Furthermore, this request is without reasonable limitation in its scope, as it purportedly

27    seeks copies of all "writings" related to ambiguous sub-topics such as "discipline,"

28    "sanctions," "investigations," "review," "personnel complaints" and/or "claims for

1  damages" against all named defendants. As such, this request could potentially include

2  voluminous amounts of documentation which would not be relevant to the instant

3  litigation. See <u>Konczakowski v. Paramount Pictures</u>, Inc., 20 F.R.D. 588 (D.C. N.Y.

4  1957) (finding that requests were objectionable where information sought related to

5  activities of defendants for period of more than twenty years).

6

7  Moreover, this request contains subparts and is more than a single request as it relates

8  numerous discrete topics and numerous discrete categories of materials, and as such is

9  not set forth with "reasonable particularity." [See F.R.C.P. Rule 34(b); see also <u>Safeco</u>

10  <u>of America v. Rawstron</u>, 181 F.R.D. 441 (C.D.Cal. 1998)].

11

12  Furthermore, this request potentially seeks privileged information, constitutes an

13  invasion of the right of privacy of employees of the CITY OF CULVER CITY, and

14  violates the tenets of <u>Pitchess v. Superior Court</u>, 11 Cal.3d 531 (1974), as well as the

15  federal right of privacy as guaranteed by the U.S. Constitution, amendments V and XIV,

16  respectively. Furthermore, said information is protected by the Official Information

17  Privilege, Fed. Rules Civ. Proc. Rule 26(c), 28 U.S.C.A.

18

19  Additionally, although purportedly limited to the last seven years, this request is

20  improperly used in an oppressive manner, as a responding party should not be required

21  to perform burdensome labors, or execute difficult and expensive tasks, in searching for

22  facts and classifying and compiling data, especially as the request relates to any such

23  accumulated "writings" that may have been generated by "prior employing entities or

24  agencies." See <u>Aktiebolaget Vargos v. Clark</u>, 8 F.R.D. 635 (D.C. Col. 1949).

25

26  **PLAINTIFF'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 6:**

27  A.    <u>The Request Is Not Vague or Uncertain</u>

28       The Request is straightforward and clear. It seeks writings reflective of

Page 24

1  complaints, claims, investigation and discipline involving any of the individual officers
2  in this case, for a period of seven years. Moreover, defendants do not claim to
3  misunderstand any particular words or phrases.

4

5  B.      The Request Is Neither Overbroad Nor Overly Burdensome

6          Defendants' boilerplate time-frame objection is not well-made, since the Request
7  clearly delineates a seven-year period for the materials requested, which is both specific
8  and reasonable. It also limits itself to the named officers in this litigation. Further, the
9  only category of documents requested, is that which would indicate which problems
10  regarding the conduct of the individual officers named in this case were brought to the
11  attention of entity officials, and what those officials did, or did not do, about it.

12          Additionally, defendants seem to argue that this request imposes something
13  undoable because it requires the examination of, and production of, reports detailing
14  violence or patterns of violence by certain officers upon detainees over a course of
15  multiple years. If defendants maintain their claim of being incapable of effectively
16  tracking complaints, discipline and investigation regarding their police officers, Plaintiff
17  will make an appropriate motion that an adverse inference be drawn against defendants
18  as to a policy of ineffective supervision and discipline. Otherwise, defendants'
19  stonewalling will eventually short-circuit significant aspects of Plaintiff's municipal
20  liability claims. Even if this court finds this Request to exceed the permissible scope of
21  discovery, as framed, defendants' proper remedy is to produce documents within the
22  permissible scope and to register its objections – not to withhold all responsive
23  documents wholesale.

24

25  C.      The Request Seeks Relevant Evidence or Materials Reasonably Calculated to
26          Lead to the Discovery of Relevant Evidence

27          Defendants fail to explain why this Request is not relevant or reasonably
28  calculated to lead to the discovery of relevant evidence. Whether or not evidence of

1 | personnel complaints and the like will be ultimately admissible at trial, it is clearly
2 | calculated to lead to the discovery of admissible evidence. As a simple example, if a
3 | police officer involved in the events giving rise to this lawsuit had had a personnel
4 | complaint lodged against him/her for conduct similar to that alleged by Plaintiff, that
5 | fact would be clearly relevant to that officer's propensity to engage in the conduct now
6 | alleged. Even if barred at trial for its propensity value, such evidence would clearly be
7 | relevant to whether his employing entity had knowledge of such acts and met or failed to
8 | meet its training, disciplinary and supervision obligations. These are merely examples of
9 | the potential relevance of such information. Even if this court finds this Request to
10 | exceed the permissible scope of discovery, as framed, defendants' proper remedy is to
11 | produce documents within the permissible scope and to register its objections – not to
12 | withhold all responsive documents wholesale.

13

14 | D. The "Official Information Privilege" Does Not Protect the Information Withheld
15 | by Defendants

16 | Plaintiff hereby incorporates in full his argument with respect to defendants'
17 | invocation of the official information privilege, set forth *supra* in Plaintiff's Contentions
18 | Re Request for Production No. 3, Section B.

19

20 | E. No Privacy Interest Protest the Requested Material from Discovery

21 | There is no generalized governmental right to privacy. To the extent
22 | governmental privacy concerns protect materials from discovery, those come under the
23 | aegis of the official information privilege, discussed *supra*. As for third-party privacy
24 | concerns, defendants have articulated none and none are impediments with respect to
25 | this Request. As for privacy rights of the individual defendants, those are nonexistent
26 | with respect to matters relevant to the lawsuit, and in any case, the interests in disclosure
27 | outweigh any such interests. As the Northern District reasoned,

28 | *"There is even less reason to believe that the possibility of disclosure to*

Page 26

1
2
3
4
5
6
7
8

*civil rights plaintiffs will discourage citizens from filing complaints against police officers. It is not at all clear that people who feel aggrieved by actions of police officers would even think about the possibility that their complaints might be disclosed to another person who feels aggrieved by police officers. And if they did think about it they presumably would want their complaint to help someone who had suffered from a similar source."* <u>Kelly v. City of San Jose</u>, 114 F.R.D. 653, 666 (N.D. Cal. 1987).

9

10    Defendants' proper remedy is to produce the materials subject to the provisions of
11    an appropriate protective order, not to withhold all responsive materials wholesale.

12

13    **<u>DEFENDANT'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 6:</u>**
14    *[DEFENDANT FAILED TO MEET AND CONFER PER U.S.D.C. - CACD Local Rule*
15    *37 - See DECLARATION OF ORANGE (ATTACHED)]*

16

17    **<u>REQUEST FOR PRODUCTION NO. 9:</u>**
18    Every writing maintained, received or generated by you, or available to you, related to
19    agreements, reached in the past seven years, to settle claims or allegations of police
20    misconduct by any of the individual defendants named in this case.

21

22    **<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 9:</u>**
23    Due to the overbroad nature of this request, it is burdensome, oppressive, and harassing
24    as phrased, to the extent that it could implicate a multitude of documents within the
25    control of the City of Culver City that have absolutely no relevance to the claims in the
26    instant litigation. What is more, this request is vague, ambiguous and unintelligible as
27    phrased. In particular, the terms and phrases "agreements" and "police misconduct" are
28    vague, ambiguous and unintelligible so as to make a response impossible without

Page 27

speculation as to the meaning of the request. Additionally, this request seeks information which is beyond the scope of permissible discovery, where such information is not relevant to the subject matter or likely to lead to the discovery of admissible evidence. Furthermore, this request potentially seeks privileged information, constitutes an invasion of the right of privacy of employees of the CITY OF CULVER CITY, and violates the tenets of Pitchess v. Superior Court, 11 Cal.3d 531 (1974), as well as the federal right of privacy as guaranteed by the U.S. Constitution, amendments V and XIV, respectively. These objections are so too applicable with respect to any third party individuals who may be named or implicated in any of the requested documentation. Furthermore, said information is protected by the Official Information Privilege, Fed. Rules Civ. Proc. Rule 26(c), 28 U.S.C.A.

## PLAINTIFF'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 9:

A.    The Request Is Not Vague or Uncertain

The Request is straightforward and clear. It seeks writings regarding the settlement of claims or allegations regarding police misconduct. The request has been limited to the individual officers named in this case. Moreover, defendants do not claim to misunderstand any particular words or phrases.

B.    The Request Is Neither Overbroad Nor Overly Burdensome

Defendants' boilerplate time-frame objection is unfounded. The Request clearly delineates a seven-year period for the materials requested, which is both specific and reasonable. It also limits itself to the named officers in this litigation. Further, the only category of documents requested, is that which would shed light upon actions taken by the department in regard to the particular officers in this case, relative to misconduct.

Additionally, defendants seem to argue that this request imposes something undoable because it requires the examination of, and production of, reports detailing violence or patterns of violence by certain officers upon detainees over a course of

1   multiple years. If defendants maintain their claim of being incapable of effectively

2   tracking reports involving uses of force by police officers, Plaintiff will make an

3   appropriate motion that an adverse inference be drawn against defendants as to a policy

4   of ineffective supervision and discipline. Otherwise, defendants' stonewalling will

5   eventually short-circuit significant aspects of Plaintiff's municipal liability claims.

6   Even if this court finds this Request to exceed the permissible scope of discovery, as

7   framed, defendants' proper remedy is to produce documents within the permissible

8   scope and to register its objections – not to withhold all responsive documents

9   wholesale.

10

11   C.   The Request Seeks Relevant Evidence or Materials Reasonably Calculated to
12        Lead to the Discovery of Relevant Evidence

13        Defendants fail to explain why this Request is not relevant or reasonably

14   calculated to lead to the discovery of relevant evidence. The allegations of Plaintiff in

15   this case are essentially that he was racially profiled, chased down and brutally beaten

16   because of his race and choice of clothing. To the extent any number or percentage of

17   settlement agreements tend to reflect or be missing provisions to provide supplemental

18   training to officers engaged in similar acts, such information is certainly calculated to

19   lead to the discovery of relevant information. This is merely an example of the potential

20   relevance of such information. Even if this court finds this Request to exceed the

21   permissible scope of discovery, as framed, defendants' proper remedy is to produce

22   documents within the permissible scope and to register its objections – not to withhold

23   all responsive documents wholesale.

24

25   D.   The "Official Information Privilege" Does Not Protect the Information Withheld
26        by Defendants

27        Per California Public Records Act, Cal. Gov't Code § 6250, et seq., and City of

28   Santa Rosa v. Press Democrat, 187 Cal. App. 3d 1315 (Cal. Ct. App., 1986), the

Page 29

California legislature requires California public agencies to make records such as these available to the public. Furthermore, Plaintiff hereby incorporates in full his argument with respect to the official information privilege, set forth _supra_ in Plaintiff's Contentions Re Request for Production No. 3, Section B.

E.    No Privacy Interest Protest the Requested Material from Discovery

Writings reflecting settlements by the City of Culver City would show (1) payments of public funds, and/or (2) remedial actions taken by a public entity. Further, there is no generalized governmental right to privacy. To the extent governmental privacy concerns protect materials from discovery, those come under the aegis of the official information privilege, discussed _supra_. As for third-party privacy concerns, defendants have articulated none and none are impediments with respect to this Request. As for privacy rights of the individual defendants, those are nonexistent with respect to matters relevant to the lawsuit, and in any case, the interests in disclosure outweigh any such interests. Defendants' proper remedy is to produce the materials subject to the provisions of an appropriate protective order, not to withhold all responsive materials wholesale.

**DEFENDANT'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 9:**

_[DEFENDANT FAILED TO MEET AND CONFER PER U.S.D.C. - CACD Local Rule 37 - See DECLARATION OF ORANGE (ATTACHED)]_

**REQUEST FOR PRODUCTION NO. 10:**

Your use of force manual, police procedures manual, investigative manual, police department manual and all writings related to, or purporting to be rules and regulations as to police practices, training, conduct and operations, both the current versions, and the versions in effect as of January 1, 2006 through December 30, 2006.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

OBJECTION:

This request seeks information which is beyond the scope of pem1issible discovery, where such information is not relevant to the subject matter or likely to lead to the discovery of admissible evidence, as responding party contends that the requested information has no bearing on the subject litigation. This request is vague, ambiguous and unintelligible as phrased. In particular, the terms "procedures," "rules," "regulations," "practices," "training," "conduct," and "operations" are vague, ambiguous and unintelligible so as to make a response impossible without speculation as to the meaning of the request.

Moreover, this request contains subparts and is more than a single request as it relates to multiple discrete topics [current and prior "versions"] and numerous discrete categories of materials, and as such is not set forth with "reasonable particularity." [See F.R.C.P. Rule 34(b); see also Safeco of America v. Rawstron, 181 F.R.D. 441 (C.D.Cal. 1998)]. However, in the spirit of cooperation and discovery, Defendant hereby responds as follows: Counsel for responding party shall produce that portion of the Culver City Police Department use of force manual that deals specifically with the type of force (i.e., less than lethal) that was used at the time of the subject incident.

**PLAINTIFF'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 10:**

A.   The Request Is Not Vague or Uncertain

The Request is straightforward and clear. It seeks all the writings which are the stated policies and procedures by which the Culver City Police Department operates and by which it regulates and sets forth standards for its officers' conduct. The Department is part of a public entity, which serves the public, and uses public funds to do so. Nothing about the requested materials is protected from public disclosure. The court should not accept a statement from the municipality upon which this Request has been

1 | served that it cannot understand the words "procedures," "rules," "regulations,"
2 | "practices," "training," "conduct," and "operations." If it could not, it could not operate.
3 |
4 | B.   The "Official Information Privilege" Does Not Protect the Information Withheld
5 |      by Defendants
6 | Defendants have noticeably chosen not to assert that the operational and procedural
7 | manuals sought by Plaintiff are protected by the official information privilege. It is the
8 | only possible barrier to disclosure of the materials sought by this Request in this case
9 | where procedural and operational events/actions are alleged to in part be the basis of the
10 | violations of Plaintiff's rights. However, the official information privilege does not
11 | shield the requested materials from disclosure. Moreover, per California Public Records
12 | Act, Cal. Gov't Code § 6250, et seq., and City of Santa Rosa v. Press Democrat, 187
13 | Cal. App. 3d 1315 (Cal. Ct. App., 1986), records such as these are required to be made
14 | available to the public. Furthermore, Plaintiff hereby incorporates in full his argument
15 | with respect to the official information privilege, set forth supra in Plaintiff's
16 | Contentions Re Request for Production No. 3, Section B.
17 |
18 | C.   The Request Seeks Relevant Evidence or Materials Reasonably Calculated to
19 |      Lead to the Discovery of Relevant Evidence
20 |      While defendants attempt to reserve for themselves the right to screen the
21 | procedural and operations manuals and produce only the portions which they feel are
22 | pertinent, this is wholly improper and denies Plaintiff the right to make his case upon all
23 | the evidence that should come within his purview. For instance, defendants contend in
24 | their objection to this Request that the type of force is "less-than-lethal." However,
25 | Plaintiff contends that the force at issue, being struck in his head and face multiple
26 | times, having his head slammed into a concrete and metal garden hose holder and being
27 | threatened to be shot --- all involve deadly force. Further, to the extent that some of the
28 | defendant officers stood by and watched their colleagues do these things to Plaintiff,

Page 32

they had a duty to intervene to the extent these acts were excessive under the circumstances. What is said by defendants' procedural, operational, use of force, disciplinary and other manuals -- as requested -- is relevant, and reasonably calculated to the discovery of relevant evidence. To date, nothing has been received in response to this request. All of the requested manuals and policies should be produced in their entirety.

**DEFENDANT'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 10:**

*[DEFENDANT FAILED TO MEET AND CONFER PER U.S.D.C. - CACD Local Rule 37 - See DECLARATION OF ORANGE (ATTACHED)]*

Respectfully submitted,                    ORANGE LAW OFFICES

DATE: 26 FEBRUARY 2008.

Olu K. Orange, Esquire
Attorney for Plaintiff

//

//

Page 33

EXHIBIT C

Olu K. Orange, Esq. , SBN: 213653
ORANGE LAW OFFICES
Equitable Plaza Tower
3435 Wilshire Blvd., Suite 2900
Los Angeles, California 90010
Telephone: (310) 815-8600
Fax: (775) 416-9221

<u>Attorney for Plaintiff</u>

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

EDWARDO RAMOS,

                       Plaintiff,

      vs.

THE CITY OF CULVER CITY, JOHN
MONTANIO, ADAM TREANOR,
CHARLES KOFFMAN, ANDREW
BELLANTE, MARCUS COLEN, BRIAN
HEMPEL, CURTIS MASSEY AND DOES
1 THROUGH 10

                     Defendants.

Case No.: CV07-4706 PA (JCx)

PLAINTIFF'S SUPPLEMENTAL
BRIEF IN SUPPORT OF MOTION TO
COMPEL FURTHER RESPONSES TO
REQUESTS FOR PRODUCTION
PROPOUNDED ON DEFENDANT
CITY OF CULVER CITY

DATE: April 1, 2007
TIME: 9:30 am / LOC: Ct. #20 (Spring)
DISC CUT: 5/19/08 - TRIAL: 07/29/08

District Judge:
Hon. Percy Anderson
**Magistrate Judge:**
**Hon. Jacqueline Chooljian**

**TO THE COURT ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE:** PLAINTIFF EDWARDO RAMOS HEREBY INCORPORATES BY REFERENCE AND SUPPLEMENTS HIS FEBRUARY 26, 2008, NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS

1  (Docket No. 44) UPON THE FOLLOWING GROUNDS AND AS SET FORTH HEREIN

2  BELOW.

3

4  **POINTS AND AUTHORITIES**

5

6  **I.   DISPUTED DISCOVERY REQUESTS**

7

8  **REQUEST FOR PRODUCTION NO. 3:**

9        Every writing maintained, received or generated by you, or available to you,

10  which mentions, or is in any way related to, Edwardo Ramos. Be advised that "writing"

11  as defined herein above includes all audio and video recordings.

12

13  **PLAINTIFF'S  SUPPLEMENTAL  CONTENTIONS  RE  REQUEST  FOR**

14  **PRODUCTION NO. 3:**

15  As to this request, plaintiff is unsure as to whether a statement indicating further

16  production was made. A critical page is missing from defendants Supplemental

17  Responses. It appears that further responsive information may have been provided, but

18  Plaintiff is unsure. Neither party noticed this deficiency during their meet and confer

19  sessions. Plaintiff's counsel has sent an email to defense counsel to clarify. Plaintiff's

20  counsel does not anticipate the existence of a further discrepancy as to this request.

21

22  **REQUEST FOR PRODUCTION NO. 4:**

23  Every writing maintained, received or generated by you, or available to you, related to

24  police officer training, certification, continuing professional education, review,

25  authorization or approval thereof for every individual defendant named in this lawsuit.

26  //

27  //

28

Page 2

PLAINTIFF'S SUPPLEMENT TO MOTION TO COMPEL

**PLAINTIFF'S SUPPLEMENTAL CONTENTIONS RE REQUEST FOR PRODUCTION NO. 4:**

Plaintiff incorporates by reference his argument set forth in PLAINTIFF'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 4 from his NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Docket No. 44)

A.   Defendant must disclose training documents showing not only what training was received by officers, but also how such training was structured, its contents, intervals/reasons upon which it was ordered, and details as to approval or disapproval by superiors

The entire course of training, review, evaluation and education for named individual defendants is relevant to the subject matter of the lawsuit. Plaintiff's complaint alleges that Culver City has an unconstitutional policy of failing to properly train, supervise, or discipline its officers. This inadequate training serves as the basis for § 1983 liability because failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. Implicit in Plaintiff's contentions is the reality that (i) custom  and/or practice of the Culver City Police Department encourages violations of persons' civil or legal rights, and (ii) that Culver City knew or had reason to know of this problem, and its failure to address the problem directly caused damage to Plaintiff.

Actions against municipalities for violation of § 1983 are governed by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) and its extensive progeny. Under these cases, a local government is only liable where the municipality itself causes the constitutional violation; liability may not be imposed on the basis of respondeat superior. City of Canton v. Harris, 489 U.S. 378, 385 (1989). In the context of a claim of inadequate training, liability will attach under § 1983 where the failure to train amounts to "deliberate indifference" to the rights of the adversely affected party. See Canton, 489

U.S. at 388; Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006). *"The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy."* Long, 442 F.3d at 1186.

The Supreme Court has described two circumstances under which inadequate training can be the basis for municipal liability. First, there may be deficiencies in a training program designed *"to apply over time to multiple employees."* Bd. of County Comm'rs v. Brown, 520 U.S. 397, 407 (1997). That is, a plaintiff may demonstrate a pattern of constitutional violations on the part of defendant. Continuing adherence by policymakers *"to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action -- the 'deliberate indifference' - necessary to trigger municipal liability."* Id. (citation omitted.) Thus, a pattern of tortious conduct by inadequately trained employees may show lack of proper training . . . is the 'moving force' behind the plaintiff's injury. Id. at 407-08 (citation omitted).

Second, a plaintiff may also prove a failure-to-train claim without showing a pattern of constitutional violations where *"a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations."* Id. at 409; see also Long, 442 F.3d at 1186. The Brown court has explained that *"[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice -- namely, a violation of a specific constitutional or statutory right."* Brown, 520 U.S. at 409.

Mr. Ramos cannot make any showing as to likelihood of reoccurrence, nor adequacy of training, nor conscious disregard -- and thus municipal liability via deliberate indifference -- without the requested materials. As the courts have set forth

PLAINTIFF'S SUPPLEMENT TO MOTION TO COMPEL

1  deliberate indifference as a method of establishing municipal liability, Mr. Ramos must
2  have the opportunity to conduct full discovery as to elements which support deliberate
3  indifference as a theory of liability.

4

5  B.    Defendants waived the Official Information Privilege by failing to correctly assert
6        it. Moreover, even if Defendants had not already waived the Official Information
7        Privilege it would still not apply.

8        Plaintiff has already presented arguments counter to defendants'. Thus, Plaintiff
9  incorporates by reference his argument set forth in PLAINTIFF'S CONTENTIONS RE
10  REQUEST FOR PRODUCTION NO. 4 from his NOTICE OF MOTION AND
11  MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Docket No. 44).

12       Further, while Defendants offer Burlington Northern & Santa Fe Ry. v. United
13  States Dist. Court, 408 F.3d 1142, 1146 (9th Cir. 2005), as support for their hope for a
14  privilege assertion "do-over," they are asking the court to compare apples and oranges.
15  Burlington Northern spoke to the issue of waiver with regard to a totally different type
16  of privilege. All parties were private and no governmental entity asserted privilege in
17  Burlington Northern. Thus, no *official information privilege* was at issue. Thus, on the
18  issue of waiver due to failure to properly invoke privilege, Burlington Northern is
19  inapplicable. Indeed, in United States v. Reynolds, the Supreme Court held:

20       *"The privilege belongs to the Government and must be asserted by it; it*
21       *can neither be claimed nor waived by a private party. It is not to be lightly*
22       *invoked. There must be a formal claim of privilege, lodged by the head of*
23       *the department which has control over the matter, after actual personal*
24       *consideration by that officer."* United States v. Reynolds, 345 U.S. 1, 7-8
25       (U.S. 1953)

26

27       As to the official information privilege, it must be asserted at the time a party's
28  discovery response is served. Per Miller v. Pancucci:

Page 5

1

2

3

4

5

6

7

8

9

10

11

12

13

*"A party who receives a discovery request must, within the time permitted by rule to respond or object, serve and file an objection that invokes the official information privilege by name. [citation omitted]. The party must set forth this objection separately in response to each discovery question or request that would reach material covered by the privilege. [citation omitted]. The asserting party, as in any case where a privilege is claimed, must sufficiently identify the documents so as to afford the requesting party an opportunity to challenge the assertion of privilege. [citation omitted]. Additionally, the party must submit, **at the time it files and serves its response to the discovery request**, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter. [citation omitted]."* Miller v. Pancucci, 141 F.R.D. 292, 300 (D. Cal. 1992)

14

15   Defendants have already waived any official information privilege which may or

16   may not have applied to these materials. Additionally, as set forth in Plaintiff's original

17   motion, even if examined by balancing test, disclosure is appropriate.

18

19   **REQUEST FOR PRODUCTION NO. 5:**

20   For the past seven years, every writing maintained, received or generated by you, or

21   available to you, related to, constituting, or purporting to be police reports of any kind

22   (by way of example but not limitation: incident reports, arrest reports, crime reports, log

23   entries, etc.) meeting all of the following criteria: (i) in any way mentioning any of the

24   individual defendants named in this case, AND (ii) involving the arrest or detention of

25   any person, AND (iii) wherein any person was indicated as injured and/or given medical

26   treatment of any type or degree.

27   //

28   //

PLAINTIFF'S SUPPLEMENT TO MOTION TO COMPEL

**PLAINTIFF'S SUPPLEMENTAL CONTENTIONS RE REQUEST FOR PRODUCTION NO. 5:**

Plaintiff incorporates by reference his argument set forth in PLAINTIFF'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 5 from his NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Docket No. 44)

A.    Defendant must disclose documents reasonably calculated to lead to the discovery of relevant evidence regarding a pattern of constitutional violations of the types alleged by the Plaintiff

The requested documents are essential to Mr. Ramos' failure to train/discipline claim. As set forth herein above, per Bd. of County Comm'rs v. Brown, 520 U.S. 397, 407 (1997), *"... a plaintiff may demonstrate a pattern of constitutional violations on the part of defendant. Continuing adherence by policymakers "to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action -- the 'deliberate indifference' - necessary to trigger municipal liability."* Id. *(citation omitted.) Thus, a pattern of tortious conduct by inadequately trained employees may show lack of proper training . . . is the 'moving force' behind the plaintiff's injury."* Id. *at 407-08 (citation omitted)."*

Mr. Ramos has alleged that he has been the victim of excessive force. In order to establish a policy of failing to train or discipline, he must have the requested documents. Furthermore, the requested documents are essential to Mr. Ramos' claim that an unconstitutional custom led to his injuries. Defendants claim that they cannot assemble the relevant materials, and by extension, should not be held responsible for any tendency they may have to indicate a custom of constitutional violations. However, per the Ninth Circuit:

*"... a local government may be liable for its custom irrespective of*

*whether official policymakers had actual knowledge of the practice at issue. The existence of custom as a basis for liability under § 1983 thus serves a critical role in insuring that local government entities are held responsible for widespread abuses or practices that cannot be affirmatively attributed to the decisions or ratification of an official government policymaker but are so pervasive as to have the force of law."* <u>Thompson v. Los Angeles</u>, 885 F.2d 1439, 1444 (9th Cir. 1989).

Defendants cannot justifiably hide behind ineptitude and/or inability in order to avoid disclosing records which are essential to satisfying standards imposed by courts prerequisite to establishing municipal liability. To the extent defendants refuse to provide Mr. Ramos with the requested information, they should suffer an adverse inference as to custom and policy.

**<u>REQUEST FOR PRODUCTION NO. 6</u>:**

For the past seven years, every writing maintained, received or generated by you, or available to you, related to any, discipline, sanctions, investigations, review, personnel complaints, claims for damages or other complaints made, or actions taken against, related to, or concerning any of the individual defendants named in this case whether taken or initiated by you, or by prior employing entities or agencies.

**<u>PLAINTIFF'S SUPPLEMENTAL CONTENTIONS RE REQUEST FOR PRODUCTION NO. 6</u>:**

Plaintiff incorporates by reference his argument set forth in PLAINTIFF'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 6 from his NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Docket No. 44).

Further, Plaintiff reasonably requested materials for the seven years prior to the

date the discovery request was served upon defendants. For some reason, unknown to Plaintiff, Defendants have arbitrarily self-limited their response to 4 years and 7 months prior to the month in which Plaintiff was beaten. By defendants' own admission, Plaintiff's discovery request has not been answered in full. Plaintiff is entitled to a complete response.

**REQUEST FOR PRODUCTION NO. 9:**

Every writing maintained, received or generated by you, or available to you, related to agreements, reached in the past seven years, to settle claims or allegations of police misconduct by any of the individual defendants named in this case.

**PLAINTIFF'S SUPPLEMENTAL CONTENTIONS RE REQUEST FOR PRODUCTION NO. 9:**

Plaintiff incorporates by reference his argument set forth in PLAINTIFF'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 5 from his NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Docket No. 44).

Further, Plaintiff reasonably requested materials for the seven years prior to the date the discovery request was served upon defendants. For some reason, unknown to Plaintiff, Defendants have arbitrarily self-limited their response to 4 years and 7 months prior to the month in which Plaintiff was beaten. By defendants' own admission, Plaintiff's discovery request has not been answered in full. Plaintiff is entitled to a complete response.

**REQUEST FOR PRODUCTION NO. 10:**

Your use of force manual, police procedures manual, investigative manual, police department manual and all writings related to, or purporting to be rules and regulations as to police practices, training, conduct and operations, both the current versions, and the

1  versions in effect as of January 1, 2006 through December 30, 2006.

2

3  **PLAINTIFF'S SUPPLEMENTAL CONTENTIONS RE REQUEST FOR**
4  **PRODUCTION NO. 10:**

5      Plaintiff incorporates by reference his argument set forth in PLAINTIFF'S
6  CONTENTIONS RE REQUEST FOR PRODUCTION NO. 10 from his NOTICE OF
7  MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Docket
8  No. 44).

9      Further, each of the manuals and/or compilations of practices are public records --
10  as defined by California law. Per the California Public Records Act, specifically Cal
11  Gov Code § 6252, *"[public] records includes any writing containing information*
12  *relating to the conduct of the public's business prepared, owned, used, or retained by*
13  *any state or local agency regardless of physical form or characteristics."* <u>Cook v. Craig</u>,
14  55 Cal. App. 3d 773, 783 (Cal. Ct. App. 1976).

15      To the extent that they do not involve internal departmental security procedures,
16  police procedural policies have been held to be subject to public disclosure per the
17  California Public Records Act by California courts. Indeed, the court in <u>Cook</u> held:

18      *"Accordingly, we hold that the CHP is required by the PRA to make*
19      *available for public inspection and copying its procedural regulations*
20      *governing the investigation of citizen complaints about the conduct of*
21      *CHP personnel; and that the demurrer to the first cause of action was*
22      *erroneously sustained."* <u>Cook v. Craig</u>, 55 Cal. App. 3d 773, 784 (Cal.
23      Ct. App. 1976).

24

25      Defendants cannot reasonably maintain their refusal to disclose to plaintiff, a
26  public citizen, the policies, in-full, by which they (public servants) conduct themselves.
27  //
28  //

PLAINTIFF'S SUPPLEMENT TO MOTION TO COMPEL

## II.   CONCLUSION

To the extent any discovery requests in Plaintiff's <u>NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Docket No. 44)</u> have not been fully complied with by defendants, full compliance should be ordered. To the extent that a protective order is necessary to facilitate the disclosure of any materials not falling within the provisions of the California Public Records Act, Plaintiff is willing to agree to such an order.

Respectfully submitted,                              ORANGE LAW OFFICES

DATE: 18 MARCH 2008.

_____

Olu K. Orange, Esquire
Attorney for Plaintiff

//
//

EXHIBIT D

1   Olu K. Orange, Esq. , SBN: 213653
2   ORANGE LAW OFFICES
    Equitable Plaza Tower
3   3435 Wilshire Blvd., Suite 2900
4   Los Angeles, California 90010
    Telephone: (310) 815-8600
5   Fax: (775) 416-9221

6
    <u>Attorney for Plaintiff</u>
7

8                 **UNITED STATES DISTRICT COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10

11  EDWARDO RAMOS,                          Case No.: CV07-4706 PA (JCx)

12                          Plaintiff,      PLAINTIFF'S  SECOND
                                            SUPPLEMENTAL BRIEF IN
13          vs.                             SUPPORT OF MOTION TO COMPEL
                                            FURTHER RESPONSES TO
14  THE CITY OF CULVER CITY, JOHN           REQUESTS FOR PRODUCTION
    MONTANIO, ADAM TREANOR,                 PROPOUNDED ON DEFENDANT
15  CHARLES KOFFMAN, ANDREW                 CITY OF CULVER CITY:
16  BELLANTE, MARCUS COLEN, BRIAN           DECLARATION: EXHIBITS
    HEMPEL, CURTIS MASSEY AND DOES
17  1 THROUGH 10
18                                          DATE:  April 1, 2007
                            Defendants.     TIME:   9:30 am / LOC: Ct. #20 (Spring)
19                                          DISC CUT: 5/19/08 - TRIAL: 07/29/08
20
                                            District Judge:
21                                          Hon. Percy Anderson
22                                          **Magistrate Judge:**
                                            **Hon. Jacqueline Chooljian**
23

24

25  **TO  THE  COURT  ALL  PARTIES  AND  THEIR  ATTORNEYS  OF  RECORD,**
26
    **PLEASE   TAKE   NOTICE:**   PLAINTIFF   EDWARDO   RAMOS   HEREBY
27
    INCORPORATES BY REFERENCE AND SUPPLEMENTS HIS FEBRUARY 26, 2008,
28

                                   Page 1

NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS
(Docket No. 44) UPON THE FOLLOWING GROUNDS AND AS SET FORTH HEREIN
BELOW.

## **POINTS AND AUTHORITIES**

## I.   **INTRODUCTION**

Plaintiff avails himself of the Court's gracious indulgence and submits this
supplement in an earnest attempt to clarify those areas of concern identified by the Court
in its March 21, 2008, minute order. Plaintiff has, and continues to, attempt to be as
clear as possible for the Court. As to Plaintiff's position on compliance, only defendants
are in a position to know whether they have done an exhaustive search and fully
complied. Plaintiff requests complete discovery in order to make any further indications
on Defendant's compliance. Plaintiff also requests discovery in order to support his
claims. Indeed, per <u>Kelly v. San Jose</u>:

> *On the other hand, courts obviously must be careful not to pre-judge the*
> *merits of claims whose strength may be demonstrable only after the very*
> *discovery that is in issue. Given the elusiveness of proof of some kinds of*
> *civil rights claims (especially those that turn on proof that defendants acted*
> *with improper motives or an evil heart), and the importance of the policies*
> *that inform civil rights laws, it is especially important that judges give*
> *plaintiffs in these matters a fully reasonable opportunity to develop*
> *evidence in support of their claims. Doubts must be resolved, at the*
> *discovery stage, in favor of the claimant.* <u>Kelly v. San Jose</u>, 114 F.R.D.
> 653, 666 (D. Cal. 1987)

//
//

## II.   DISPUTED DISCOVERY REQUESTS

### REQUEST FOR PRODUCTION NO. 3:

Every writing maintained, received or generated by you, or available to you, which mentions, or is in any way related to, Edwardo Ramos. Be advised that "writing" as defined herein above includes all audio and video recordings.

### COURT'S REQUEST FOR CLARIFICATION:

*Consequently, absent an affirmative written advisement to the contrary by plaintiff in plaintiff's supplemental brief, the court will not further address this request.*

### PLAINTIFF'S SECOND SUPPLEMENTAL CONTENTIONS RE REQUEST FOR PRODUCTION NO. 3:

Plaintiff believes that no discrepancy as to the scope of this request currently exists between the parties and that defendants are aware of their duties as to discovery compliance under the Federal Rules of Civil Procedure. Not knowing what exists in the first place, Plaintiff cannot reasonably take a position on exhaustive compliance.

### REQUEST FOR PRODUCTION NO. 4:

Every writing maintained, received or generated by you, or available to you, related to police officer training, certification, continuing professional education, review, authorization or approval thereof for every individual defendant named in this lawsuit.

### COURT'S REQUEST FOR CLARIFICATION:

*Defendants suggest that the only portions of this request which remain outstanding relate to: (1) whether defendants have waived privacy and official information privilege objections based upon the timing of the provision of a privilege log; (2) whether, assuming no waiver, the documents identified on the privilege log*

1   *(which consist entirely of performance evaluations of the individual defendants) must be*
2   *produced; and (3) whether defendants must produce other documents establishing*
3   *"authorization or approval of training."*

4       The court cannot discern from plaintiff's cross-brief whether plaintiff agrees that
5   these are the only items relating to request no. 4 which remain in issue. Nor can the
6   court discern whether it is plaintiff's position that the third category of documents is
7   encompassed within the items on the privilege log or refers to other unspecified
8   documents. Consequently, plaintiff is directed to clarify these matters in his
9   supplemental brief.

10

11  **PLAINTIFF'S SECOND SUPPLEMENTAL CONTENTIONS RE REQUEST**
12  **FOR PRODUCTION NO. 4:**

13      Plaintiff is not in a position to know whether there are other documents outside
14  the description identified by the categories set forth by defendants, nor in a position to
15  know how defendants interpret their own descriptions. Thus, plaintiff is in disagreement
16  with defendants' contention that those are the only outstanding areas.

17      Plaintiffs requested:

18      *"Every writing maintained, received or generated by you, or available to*
19      *you, related to police officer training, certification, continuing*
20      *professional education, review, authorization or approval thereof for*
21      *every individual defendant named in this lawsuit."*

22

23      In defining "writing," because plaintiff can in no way know for certain how
24  defendants describe their documents, categorically or individually, Plaintiff set forth in
25  the instructions/definitions portion of the requests:

26      *"The term "WRITING" shall include all things defined in Federal Rule of*
27      *Evidence 1001 and includes, without limitation, all written, recorded,*
28      *transcribed, punched, taped (including computer tapes), filmed,*

*photographed, videotaped, tape-recorded, printed or other matter, of every kind and description, however produced or reproduced, and however preserved, including information contained on computer disk, CD-ROM, computer hard drive, server, microfiche, film, videotape, audiotape or otherwise, including but not limited to the original and any copy and all drafts, of any letter, memorandum, telegram, report, manual, bulletin, study, record, statement, message, hand written note, calendar, diary, working paper, sketch, computer tape, data sheet, data card, tape recording, or any other written, printed or recorded matter, books, letters, pamphlets, correspondence, memoranda, reports, manuals, training bulletins, Special Orders, crime reports, preliminary investigation reports, investigation reports, arrest reports, evidence reports, equipment reports, vehicle reports, sergeant's reports, sergeant's daily reports, station commander's reports, supervisor's reports, watch commander's reports, lieutenant's reports, use of force reports, follow-up reports, Daily Work Sheet reports, Daily Field Activities Reports, employee injury reports, telephone calls, radio transmissions, surveillance video, surveillance audio, mobile audio-video unit recordings, personnel complaint investigations, citizen complaint investigations, chronologies, logs, notes, drafts of any written document, minutes of meetings, interview tapes and transcriptions, California Tort Claim investigations and all other physically preserved documentary information, regardless of the medium of preservation, however produced or reproduced, from whatever source obtained, in the defendant's possession or control, or subject to its control, or to which it has access. "WRITING" shall also include originals and all non-identical copies. Copies which differ by reason of notations or electronic encodings thereon are considered "nonidentical" copies.*

Page 5

1

2      Moreover, in defendants' response, defendant has not indicated that the items on

3  the privilege log are all it can produce after an exhaustive search in response to the

4  inquiry. In fact, EVERY document identified or produced by defendants is done *"In the*

5  *spirit of cooperation and discovery, and without waiving the foregoing objections ..."*

6  (see EXHIBIT B). Plaintiff is unable to discern whether defendants are complying with

7  an enforceable discovery obligation under the FRCP, or withholding some items -- but

8  producing other items, just to be nice "in the spirit of cooperation."

9

10     Accordingly, Plaintiff's position is that every "writing" related to the topics

11  identified in Plaintiff's discovery request, and as defined, must be produced. Based upon

12  defendants' confusing answer, Plaintiff cannot agree that items (1) through (3) are the

13  only outstanding items remaining at issue relating to request number four. Not knowing

14  otherwise, Plaintiff must also take the position that the items identified in the privilege

15  log do not fully encompass or satisfy the third category of documents.

16

17  **REQUEST FOR PRODUCTION NO. 5:**

18  For the past seven years, every writing maintained, received or generated by you, or

19  available to you, related to, constituting, or purporting to be police reports of any kind

20  (by way of example but not limitation: incident reports, arrest reports, crime reports, log

21  entries, etc.) meeting all of the following criteria: (i) in any way mentioning any of the

22  individual defendants named in this case, AND (ii) involving the arrest or detention of

23  any person, AND (iii) wherein any person was indicated as injured and/or given medical

24  treatment of any type or degree.

25

26  **COURT'S REQUEST FOR CLARIFICATION:**

27      *Plaintiff is directed forthwith to contact defendants' counsel to indicate whether*

28  *or not he has a technical representative. If plaintiff advises defendants' counsel that he*

*has a technical representative, the parties are directed expeditiously to arrange a meet and confer session for their technical representatives to see if a reasonable technically feasible accommodation could be reached relative to this document request.*

*If plaintiff does not have a technical representative, he should so advise the court in his supplemental brief. If plaintiff has a technical representative, the parties are to include in their supplemental briefs, the status of the meet and confer efforts of the technical representatives and any progress made.*

## PLAINTIFF'S SECOND SUPPLEMENTAL CONTENTIONS RE REQUEST FOR PRODUCTION NO. 5:

Per the Court's instructions, Plaintiff expeditiously secured a technical representative/expert. Plaintiff's technician, Mrs. Shawn Featherstone, conferred via conference call with Mr. Orange, Mr. Sarno, and two persons identified by Mr. Sarno as being persons most knowledgeable from the Culver City Police Department about their database system, Lt. Chris Maddox and Ofc. Mark Young.

While it does appear that the Culver City Police Department is in disarray regarding its database, Plaintiff's technician is of the opinion that it is possible to extract the data necessary to satisfy (i) the Court's inquiries posed in its Minute Order of March 21st, and (ii) Request for Production No. 5 posed by Plaintiff (see EXHIBIT A; FEATHERSTONE DECLARATION). Accordingly, plaintiff reiterates his request for the Court to order production.

## REQUESTS FOR PRODUCTION NOS. 6 & 9:

**[NO. 6]** For the past seven years, every writing maintained, received or generated by you, or available to you, related to any, discipline, sanctions, investigations, review, personnel complaints, claims for damages or other complaints made, or actions taken against, related to, or concerning any of the individual defendants named in this case

1   whether taken or initiated by you, or by prior employing entities or agencies.

2

3   **[NO. 9]** Every writing maintained, received or generated by you, or available to you,

4   related to agreements, reached in the past seven years, to settle claims or allegations of

5   police misconduct by any of the individual defendants named in this case.

6

7   **COURT'S REQUEST FOR CLARIFICATION:**

8   *Defendants are directed in their supplemental brief to clarify the period for which they*

9   *have searched for and produced responsive documents. Plaintiff is directed in his*

10  *supplemental brief to clarify whether the only remaining issue in dispute is defendants'*

11  *production of responsive documents for the period of July 22, 1999 to November 2001.*

12

13  **PLAINTIFF'S SECOND SUPPLEMENTAL CONTENTIONS RE REQUESTS**

14  **FOR PRODUCTION NO. 6 & 9:**

15        As explained herein above, Plaintiff cannot speculate as to whether defendant has

16  produced every writing satisfying Requests for Production Nos. 6 & 9, from December

17  2001 to July 2006, because defendant has the information and Plaintiff does not.

18  However, in response to the Court's inquiry, Plaintiff does contend that "writings"

19  produced in response to this request should also encompass July of 1999 up through and

20  including November of 2001.

21

22  **REQUEST FOR PRODUCTION NO. 10:**

23  Your use of force manual, police procedures manual, investigative manual, police

24  department manual and all writings related to, or purporting to be rules and regulations

25  as to police practices, training, conduct and operations, both the current versions, and the

26  versions in effect as of January 1, 2006 through December 30, 2006.

27

28  **COURT'S REQUEST FOR CLARIFICATION:**

*Plaintiff is ordered to address why the section of the requested manual already produced is insufficient, and how the production of the requested manual as a whole, as opposed to a more limited section thereof, is relevant or reasonably calculated to lead to the discovery of admissible evidence.*

## PLAINTIFF'S SECOND SUPPLEMENTAL CONTENTIONS RE REQUEST FOR PRODUCTION NO. 10:

Everything police officers do is dictated by a policy of some sort. Whether its the length of a mustache, times to take lunch breaks or apprehension of suspects, one or more policies determines police officer conduct -- for everything.

The basis for municipal liability is rooted in policy, defacto, or dejure. Indeed, the policy of permitting an absence of policy is itself a basis for liability. These policies, or absences thereof, are very often reflected in written documents. Moreover, individual liability may be supported, and in some cases established, by violation of a stated policy.

Sparing the Court the standard recitation of introductory facts, Mr. Ramos contends that he has been unlawfully treated from the point at which Culver City Police Department officers saw him until the point at which they released him from their custody. In addition, he contends that failures in training, discipline and supervision at points prior to his encounter with the officers led to his unlawful treatment. Police officer training, discipline and supervision are also subject to, or sometimes embody, policies.

Plaintiff cannot possibly know what the current sections/headings/etc. of the Culver City Police Department's manuals, nor how many types of manuals there actually happen to be, having not seen them. However, by way of example and not limitation, Plaintiff contends that the following claims/stages of his encounter are relevant to the following topics which should be included in a manual or embodied in written policy:

[(organized by) INCIDENT TOPIC: policy topic]

(1) IDENTIFICATION OF MR. RAMOS AS A SUSPECT: Identification of persons as suspects and/or investigation thereof. Definition of probable cause. Definition of reasonable suspicion. Racial profiling. Behavioral profiling. Clothing-based profiling.

(2) IDENTIFICATION OF OFFICERS: Identification of self to persons as an officer of the law. Circumstances where necessary/ not necessary.

(3) CHASE OF MR. RAMOS: Foot pursuit procedures. Vehicle pursuit procedures. Procedures/Circumstances for requesting airborne patrol assistance (a helicopter was requested).

(4) ASSESSMENT OF MR. RAMOS AS A THREAT: Offensive positions and actions. Defensive positions and actions. Behavioral observations. Behavioral profiling.

(5) APPREHENSION OF MR. RAMOS: Use of force procedures. Procedures for drawing firearm. Policies and/or procedures for strikes above the shoulders. Procedures for closed hand strikes vs. open hand, etc.

(6) FAILURE OF OTHER OFFICERS TO INTERVENE TO PREVENT INJURY TO MR. RAMOS: Intervention. Ethical duties. Bystander liability.

(7) MEDICAL TREATMENT GIVEN TO MR. RAMOS WHEN TAKEN TO HOSPITAL: Documentation of injury. Time within which medical treatment to be provided. Appropriate treatment providers.

(8) INCARCERATION OF MR. RAMOS: Jail procedures. Jail medical observation/treatment procedures. Release procedures.

(9) REPORTING AS TO ITEMS 1 THROUGH 8

The capitalized portions of items 1 through 9 all identify actions taken by the Culver City Police Department relative to Mr. Ramos. In his Complaint, he has claimed wrongdoing as to each item. The stated policies and procedures of the Culver City Police Department as to items 1 through 9 are (a) reasonably calculated to lead to the discovery of admissible evidence, and (b) relevant because, depending on what they are, they make more or less probable the existence of a defacto or dejure policy of practice that led to Mr. Ramos injuries in the context of violations complained of.

For example, if any of the policies embodied in topics stated above were violated by actions taken by the individual defendants in their interaction with Mr. Ramos, his claims are stronger. If they were violated continuously, but never enforced via effective discipline or re-training, assuming training in the first place, Mr. Ramos municipal claims are stronger. If there are no violations and/or effective training, Mr. Ramos' claims are weaker. Every policy and/or procedure related to every phase of Mr. Ramos' encounter and/or training, supervision and discipline is relevant and reasonably calculated to lead to admissible information, and should be produced. Indeed, per Soto v. City of Concord:

1
2
3
4
5
6

7

"Plaintiff requests the Court to compel production of; for the period 1985 to the current date, all police guidelines, directives, policy statements, procedures, and training materials, in any form and of any type, concerning, to any extent or degree, police policy, custom or practice regarding the discipline of officers generally, and specifically, discipline for the violation of constitutional rights.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Defendant objects on the grounds that the request is not relevant to any issue in this matter nor reasonably calculated to lead to discovery of admissible evidence. The existence or non-existence of adequate guidelines for disciplining officers is relevant to Plaintiff's claims against the city under the Monell analysis, because such evidence may show a pattern or practice of such civil rights violations alleged in the complaint. 436 U.S. 658, 698, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In addition, Kelly encourages the disclosure of manuals, memoranda, guidelines, and other documents that reflect the policies of the police department. 114 F.R.D. at 666. "A police department's interest in not permitting the general public to have access to such materials may be weighty. . . . [but] the weight of law enforcement's interest drops dramatically, however, when a court imposes a tightly drawn protective order on the disclosure of such material, so that only counsel for plaintiff and perhaps his expert has access to it." Id. Thus, this Court concludes that police guidelines, policy statements, and other materials contained in Request No. 13 are relevant and will allow discovery of such material subject to the protective order which is attached to this opinion." Soto v. City of Concord, 162 F.R.D. 603, 622 (D. Cal. 1995)

28

Page 12

### III.   CONCLUSION

To the extent any discovery requests in Plaintiff's <u>NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Docket No. 44)</u> have not been fully complied with by defendants, full compliance should be ordered. To the extent that a protective order is necessary to facilitate the disclosure of any materials not falling within the provisions of the California Public Records Act, Plaintiff is willing to agree to such an order.

Respectfully submitted,                            ORANGE LAW OFFICES

DATE: 26 MARCH 2008.

Olu K. Orange, Esquire
Attorney for Plaintiff

//
//

Page 13

EXHIBIT E

1      **DECLARATION OF SHAWN FEATHERSTONE**

2

3    **I, SHAWN FEATHERSTONE, declare as follows:**

4          1. I am over 18 years of age. My business address is 5030 Marburn Avenue,

5    Los Angeles, CA   90043. If called and sworn as a witness, I could and would

6    competently testify to the following based on personal knowledge or on my review or

7    consideration of facts made known to me for purposes of this matter:

8

9          2. My qualifications include 22 years of experience in the field of Information

10   Systems, with extensive experience in enterprise level data modeling and application

11   design. I am the principal consultant of Baccus Group Database Design. As such, I

12   provide technical expertise to a wide-range of organizations, developing custom

13   database solutions and optimizing legacy systems. Prior to Baccus Group, I served as

14   Database Development Manager for the Walt Disney Company in Burbank, California.

15   My seven years at Disney, included service as the Technical Lead on the animation

16   database migration project for the TV Animation division of the Walt Disney

17   Company. Further, I have spoken at technology seminars throughout the U.S. and in

18   England, on the topic of data normalizaton and best practices of database design

19

20         3. On Friday, March 21st, 2008, I was contacted by counsel, Olu K. Orange,

21   for Plaintiff Edwardo Ramos in USDC-CACD Case No. CV07-4706, to assess the

22   feasibility of extracting information from the Culver City Police Department's

23   (hereafter "CCPD") information management database.

24

25         4. I have not yet had an opportunity to physically examine CCPD's database.

26   However, on Tuesday, March 25th, 2008, I spoke with CCPD Lt. Chis Maddox, Ofc.

27   Mark Young, Mr. Orange and Attorney Justin Sarno via conference call about the

28   CCPD database. Officers Maddox and Young were indicated by Attorney Sarno as

1

1   being the two "persons most knowledgeable" about CCPD's database system. Prior
2   to the call, Mr. Orange provided me with (a) a copy of the issues the Court raised in
3   its Minute Order of March 21st, and (b) the wording of Plaintiff's Request For
4   Production Number 5, which I reviewed.

5

6       5. During the conference call the CCPD officers indicated that: (a) they have
7   been unable to accurately query their own database for a long time, (b) even using
8   multiple processes to execute queries has no guarantee of accuracy, (c) it is their
9   impression that the database is very convoluted, (d) they have "no idea" of how many
10  database tables there are in the database, and (e) [Officer Young] couldn't "tell you"
11  how many records are stored in the database.

12

13      6. However, the officers also indicated that: (f) the database engine is
14  "Microsoft SQL 2000," (g) it resides on Dell machines with Intel processors, (h) the
15  database system does contain all of the info, but to access it would require the
16  generation of custom queries, displays and assembly of information, and (i) you can
17  get information out of the database, "but it takes a lot of massaging."

18

19      7. In my education and experience, I know Microsoft SQL to be a very
20  common database, if not the most common world-wide. Additionally, regardless of
21  the type of custom overlay a SQL database may have (which the Officers indicated
22  as "Visionaire"), certain functionality is native to every SQL database.

23

24      8. Accordingly, upon my education and experience, and in consideration of
25  Items "a" through "i" in Paragraphs 5 and 6 herein above, it is my opinion that the
26  information the Court has indicated in its order, and the records Mr. Orange has
27  requested in the aforementioned discovery request, should effectively be able to be
28  extracted from the CCPD database system by a combination of (i) queries through

1  the existing user interface, (ii) direct queries to the back-end SQL database, and (iii)
2  data export to query the data in an external source/environment. To confirm and
3  execute the extraction, a database schema (structural map), and access to the CCPD
4  database are necessary.

5

6      I declare, under penalty of perjury under the laws of the State of California and
7  the United States of America, that the foregoing is true and correct, and that this
8  declaration was executed this 26th day of MARCH 2008, at Los Angeles, California.

9

10  Respectfully submitted,                    SHAWN FEATHERSTONE
11  DATE: 26 MARCH 2008.

12

13

14                                         Shawn Featherstone

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

EXHIBIT F

1   **STEVEN J. ROTHANS – State Bar No. 106579**
2   **JUSTIN READE SARNO – State Bar No. 229803**
    **CARPENTER, ROTHANS & DUMONT**
3   **888 S. Figueroa Street, Suite 1960**
    **Los Angeles, CA 90017**
4   **(213) 228-0400**
    **(213) 228-0401 [fax]**
5   **srothans@crdlaw.com/jsarno@crdlaw.com**

    Attorneys for Defendant, CITY OF CULVER CITY, a public entity

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  EDWARDO RAMOS,                        )  Case No.:  CV 07-4706 PA (JCx)
                                          )
12                  Plaintiff,            )  **DECLARATION OF OFFICER**
                                          )  **MARC YOUNG IN SUPPORT OF**
13  vs.                                   )  **DEFENDANT CITY OF CULVER**
                                          )  **CITY'S SUPPLEMENTAL BRIEF**
14  THE CITY OF CULVER CITY, JOHN         )  **RE: PLAINTIFF EDWARDO**
    MONTANIO, ADAM TREANOR,               )  **RAMOS' REQUEST FOR**
15  CHARLES KOFFMAN, ANDREW               )  **PRODUCTION OF DOCUMENTS**
    BELLANTE, MARCUS COLEN,               )  **[SET ONE]**
16  BRIAN HEMPEL, CURTIS MASSEY           )
    AND DOES 1 THROUGH 10                 )
17                                        )
                    Defendants.           )  **United States District Court Judge**
18                                        )  **Honorable Percy Anderson**
                                          )
19                                        )  Magistrate Judge
                                          )  Honorable Jacqueline Chooljian
20  _____)

21       I, OFFICER MARC YOUNG, declare that:

22       1.      I am currently an officer with the Culver City Police Department, and

23  have been employed as a peace officer for the past twenty-one (21) years.

24       2.      This Declaration is made with respect to the requested production of

25  certain documents within the Culver City Police Department (hereinafter "CCPD")

26  records database, including, but not limited to documents concerning police

27  reports, arrest reports, or crime reports relating to OFFICER ADAM TREANOR,

28  OFFICER CHARLES KOFFMAN, OFFICER ANDREW BELLANTE, OFFICER

LAW OFFICES OF
**CARPENTER, ROTHANS & DUMONT**
888 S. FIGUEROA STREET
SUITE 1960
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 228-0400
FACSIMILE (213) 228-0401

1  MARCUS COLEN, OFFICER BRIAN HEMPEL, and SGT. CURTIS MASSEY,

2  in the civil action entitled <u>Edwardo Ramos v. City of Culver City, et al.</u>, bearing

3  case number CV 07-4706 PA (JCx).

4      3.    The following facts are stated from my personal knowledge, except

5  those facts stated on information and belief which I believe to be true, and if called

6  as a witness, I could and would so competently testify thereto under oath.

7      4.    While not a database "expert," I have personal knowledge of the

8  CCPD records database that is currently in use and operation, along with its search

9  and retrieval capabilities, as I  presently serve as a Computer Systems and Alarm

10  Ordinance Administrator in the Scientific Services Section/Computer Services

11  Unit for the Culver City Police Department.

12      5.    I am currently the only employee of the Culver City Police

13  Department handling all matters concerning computer services and information

14  technology issues.

15      6.    I have read and reviewed the Court's Minute Order, dated March 21,

16  2008, in which the Court requested Defendants to provide specific information

17  regarding a document request that has been made by Plaintiff EDWARDO

18  RAMOS in this litigation (*i.e.,* Request No. 5 of Plaintiff's Request for Production

19  of Documents).

20      7.    After reading the *very broad language* of Request No. 5, as well as

21  the Court's Minute Order, it is my understanding that Plaintiff RAMOS seeks the

22  production of all CCPD incident reports – *i.e.,* arrest or crime reports – for the past

23  seven (7) years, regarding any instances where the individual defendants may have

24  been named or referenced; <u>and</u> where there is any reference to an "arrest" or

25  "detention"; <u>and</u> where there is any reference to an "injury" or "medical treatment"

26  to any person/victim.

27      8.    It is my understanding that the individual officers named in the instant

28  lawsuit, and referenced in Request No. 5, consist of the following: OFFICER

DECLARATION OF OFFICER MARC YOUNG

LAW OFFICES OF
CARPENTER, ROTHANS & DUMONT
888 S. FIGUEROA STREET
SUITE 1960
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 228-0400
FACSIMILE (213) 228-0401

1    ADAM TREANOR, OFFICER CHARLES KOFFMAN, OFFICER ANDREW

2    BELLANTE, OFFICER MARCUS COLEN, OFFICER BRIAN HEMPEL, and

3    SGT. CURTIS MASSEY.

4        9.    As a factual matter, Plaintiff's Request No. 5 is exceptionally

5    burdensome under the circumstances.  This asserted burden is based upon several

6    factors, as shall be set forth as follows.

7        10.    The CCPD records database does permit an officer's name, or an

8    individual's name, to be entered in order to conduct a search of its incident reports.

9        11.    A customized report would then have to be generated, which reflects

10   all search results obtained relative to a particular individual, or officer's name.

11       12.    Once a customized report is generated, to my knowledge there is no

12   simplified, automated process in place in which to search the contents of the

13   individual incident reports that it identifies.  Instead, in order to ascertain the

14   specific contents of the reports, one would have to **manually investigate and read**

15   **each and every incident report** on screen that the custom report identifies.

16       13.    In this regard, it is important to note that CCPD's records database

17   <u>does not permit</u> a global search of its contents based upon whether a generalized

18   "arrest" or "detention" occurred.  Second, CCPD's records database <u>does not</u>

19   <u>permit</u> a global search of its contents based upon generalized search terms such as

20   "injury" or the receipt of "medical treatment."  Such information could only be

21   obtained by performing a manual "key word" search of the contents of individual

22   reports once they are individually opened and accessed, or by custom written

23   programmatic scripts of which I am not proficient.

24       14.    As a result, the only way to satisfy Plaintiff's Request No. 5 would be

25   to generate customized reports for each of the named officers, for the past seven

26   years, and **manually access each and every report** that has been generated.  This

27   would require a manual target search ("word search" of) each report based on the

28   requested criteria – *i.e.,* the word "detention," and then the words "injury" or

LAW OFFICES OF
CARPENTER, ROTHANS & DUMONT
888 S. FIGUEROA STREET
SUITE 1960
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 228-0400
FACSIMILE (213) 228-0401

- 3 -

1    "medical treatment." In terms of "arrests," that information may also be

2    determined by searching for entries within an arrest database table associated with

3    a given incident report.

4        15.    It is also important to note that generating the customized reports does

5    not reflect *all instances* in which an officer may be mentioned or referenced in a

6    report. Such information could only be gleaned by <u>manually searching</u> through the

7    contents of <u>every single report</u> generated and/or by manually searching through the

8    related database, during a defined temporal period.

9        16.    It is my understanding that, in its Minute Order of March 21, 2008,

10   the Court requested information regarding "the approximate number and

11   approximate average volume of CCPD arrest/incident reports generated between

12   July 22, 2001 and July 22, 2006 (or if more readily accessible between January 1,

13   2001 and December 31, 2006), *broken down by year.*"

14       17.    The difficulty in ascertaining this information is that reports within

15   the control and custody of the Culver City Police Department are routinely divided

16   into categories of reports, of which one group contains DR numbers ("daily

17   report") and other reports consist of incident reports without official DR numbers.

18       18.    After a review of the CCPD records database, I determined that the

19   approximate number and approximate average volume of CCPD reports that are

20   assigned "DR" numbers, from the years 2001 to 2006, is approximately **44,900.**

21   Broken down by year, this would mean that there are approximately 9,000 reports

22   generated each year (2001 to 2006) that are identifiable by DR number.

23       19.    Critically, this statistic does not account for other types of database

24   associations that may have been generated during this requested period of time.

25   Queries of this type complicate the process, in terms of requiring multiple searches

26   of multiple databases. To date, I have not queried or calculated CCPD's current

27   record volume with respect to general, non DR-numbered reports.

28       20.    Without reviewing each of these reports manually, it would be

LAW OFFICES OF
**CARPENTER, ROTHANS & DUMONT**
888 S. FIGUEROA STREET
SUITE 1960
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 228-0400
FACSIMILE (213) 228-0401

- 4 -

LAW OFFICES OF
CARPENTER, ROTHANS & DUMONT
888 S. FIGUEROA STREET
SUITE 1960
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 228-0400
FACSIMILE (213) 228-0401

1   impossible to determine (or estimate for the Court) how many of these 45,000+

2   DR-related incident reports are generated, signed, or approved by a "single CCPD

3   officer/supervisor," because it is quite typical that all reports are in fact reviewed,

4   authorized, and signed off by at least two (2) officers.  Therefore, such information

5   could only be gleaned by performing a manual search (word search or hand search

6   through physical documents) of all 45,000+ DR reports, in an effort to ascertain

7   whether the report was signed by one or more officers.  In an effort to complete a

8   comprehensive investigation, this same process would then have to be **manually**

9   **repeated** for the innumerable number of non DR-numbered incident reports that

10  may also exist on separate CCPD databases.

11       21.    As a result of all of the factors outlined above, I do not have a

12  accurate estimate of the amount of time it would take to isolate/retrieve each such

13  category of reports.  It is my suspicion, given the volume of reports in existence

14  (based on a conservative estimate of approximately 45,000+ total DR-numbered

15  reports), that such an effort could take <u>in excess of two (2) months</u>.  This estimate

16  of time is based upon the fact that I am the only individual at CCPD responsible

17  for IT and database matters.  Furthermore, such an effort would invariably require

18  the assistance of numerous other IT employees from the City of Culver City, given

19  my limited resources at CCPD.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

DECLARATION OF OFFICER MARC YOUNG

22.   I cannot estimate the time that it would take to conduct a manual/relevant key word search of a single CCPD arrest/incident report of "average length," especially in light of the generalized and vague search criteria contained in Plaintiff's request. Each review would vary significantly on an incident report by incident report basis, depending on the length of the narrative report in question.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of March, 2008, at Culver City, California.

OFFICER MARC YOUNG - Declarant

LAW OFFICES OF
CARPENTER, ROTHANS & DUMONT
888 S. FIGUEROA STREET
SUITE 1960
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 228-0400
FACSIMILE (213) 228-0401

DECLARATION OF OFFICER MARC YOUNG

EXHIBIT G

750.15            THE USE OF FORCE

It is the policy of this Department that officers shall use only that force which is reasonable, given the facts and circumstances known and available to the officer at the time of the event to effectively bring the incident under control.

"Reasonableness" of the use of force must be judged from the perspective of a reasonable officer on the scene at the time of the incident.

California Penal Code Section 835a provides that:

Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or overcome resistance. A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to effect the arrest or to prevent escape or to overcome resistance.

The Department recognizes that building flexibility into an officer's determination of the appropriate use of force is advisable and acceptable -- if not essential -- given that the standard for evaluating an officer's use of force is reasonableness under the facts and circumstances known to the officer at the time.

a. A number of factors are taken into consideration when an officer selects force options, and when evaluating whether an officer has used reasonable force. The Department recognizes that officers are expected to make split-second decisions and that the amount of time available to evaluate and respond to a situation may impact the officer's decision.

b. By establishing a policy that includes a use of force continuum the Department hopes to provide additional guidance to officers in making those split-second decisions. Examples of factors which may affect an officer's force option selection include:

1. Officer/subject factors (age, size, comparative strength, skill level, injury, exhaustion, number of officers versus number of subjects.

2. Influence of drugs or alcohol.

3. Proximity of weapons.

4. Availability of other options.

5. Seriousness of offense in question.

6. Other exigent circumstances.

7. Degree of perceived risk to officer(s).

c. Examples of force may include:

1. Professional presence and persuasion through dialogue.

2. Restraining by physical holding, grasping, or moving.

3. Compliance by discomfort from the application of Oleoresin Capsicum (O.C.) Spray to the eyes, nose and mouth,

4. Compliance with the application of pain or some other physical force.

5. Impedance with impact weapons.

6. Stopping with the use of deadly force.

These examples are intended to only be a guide for officers when faced with a situation that may involve the application of force.

Certain circumstances may warrant an accelerated reaction using a higher degree of force in the initial stage of the contact in lieu of the lesser degrees of force. This must be determined by the individual officer, who is faced with the totality of the circumstances at the time the decision to use force is made.

d. Reporting and reviewing individual use of force incidents.

000094

<u>Reportable Force Defined</u>:

An incident wherein officers pursuant to their official capacity use a level of force above the "Restrain/Detain" level of force, or any incident in which an injury or complaint of injury occurs during the course of contact with a subject.

<u>Officers Responsibilities</u>:

Officers using reportable force shall:

1.  Obtain medical assistance for officers or others who have sustained injuries or complaint of injury, or who have been rendered unconscious;

2.  Notify their supervisor as soon as circumstances permit.

3.  Document the use of force in an arrest/crime or officer's report.

    Officers observing a use of reportable force who do not believe the spirit and intent of the reporting requirements are being met shall advise their supervisor.

e.  <u>Supervisor Responsibilities</u>:

When a supervisor becomes aware of the use of reportable force the supervisor shall:

1.  Review the incident.

2.  Document and forward the findings to the Chief of Police via the chain of command.
    (revised 3/93 G.O. 93-02)
    (revised 1/98)

EXHIBIT H

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-04706 PA (JCx) | Date | April 1, 2008 |
|---|---|---|---|
| Title | Edwardo Ramos v. The City of Culver City, et al. | | |

Present: The Honorable   Jacqueline Chooljian, United States Magistrate Judge

| Nancy Hackney | CS 4-1-08 | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Olu K. Orange | Steven J. Rothans |
| | Justin R. Sarno |

**Proceedings:**    **HEARING ON PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION PROPOUNDED ON DEFENDANT CITY OF CULVER CITY.**

On April 1, 2008, this court conducted a hearing regarding plaintiff's Motion to Compel Further Responses to Requests for Production Propounded on Defendant City of Culver City (Docket No. 44). The case was called and counsel made their appearances. Having reviewed the papers submitted by the parties and after considering the argument of counsel, the Court granted in part and denied in part plaintiff's Motion to Compel for the reasons stated on the record.

1.      As to Document Request No. 3, the Court directed defendants within ten (10) days: (a) to make inquiry of the Culver City Police Department ("CCPD") to determine whether any record exists of the July 22, 2006 dispatch computer query which allegedly yielded information reflecting that plaintiff was on active probation for a narcotics violation; (b) if such record exists, to produce it; (c) if such record does not exist, to provide a declaration to plaintiff's counsel so indicating; and (d) to produce the case name and number corresponding to the case on which plaintiff is currently incarcerated.

2.      As to Document Request No. 4, the Court directed defendants within ten (10) days: (a) to produce only those portions, *if any*, of performance evaluations for the five years preceding the July 22, 2006 incident in issue which reflect that the individual defendants (other than defendant Montanio): (i) used excessive force; (ii) used ethnic/racial profiling; (iii) failed to intervene upon witnessing another officer's use of excessive force; and (iv) failed to report the use of force under the CCPD's use of force reporting policy; and (b) if no such portions exist as to any of the individual defendants, to so advise plaintiff's counsel in writing.

3.      As to Document Request No. 5, the Court denied the Motion to Compel based upon its finding that the burden of the proposed discovery outweighs its likely benefit, after considering the factors set forth in Fed. R. Civ. P. 26(b)(2)(C)(iii).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-04706 PA (JCx) | Date | April 1, 2008 |
|---|---|---|---|
| Title | Edwardo Ramos v. The City of Culver City, et al. | | |

4.      As to Documents Request Nos. 6 and 9, the Court denied the Motion to Compel as moot.

5.      As to Document Request No. 10, the Court directed defendants within ten (10) days:
(a) to produce any CCPD policies governing:  (i) the identification of suspects; (ii) when/how officers are
required to identify themselves as officers; (iii) the pursuit of suspects; (iv) the assessment of an
individual as a physical threat; (v) the use of force (including deadly force); (v) intervention upon
witnessing the use of excessive force by another officer; and (vi) reporting requirements of officers who
witness the use of excessive force; and (b) if no policy exists governing any of the aforementioned areas,
to so advise plaintiff's counsel in writing.

IT IS SO ORDERED.

| | Initials of<br>Deputy Clerk | nhac |
|---|---|---|
| | | 1:15 |